## Richmond

BOARD OF COUNTY SUPERVISORS OF ROANOKE COUNTY

v.

CITY OF ROANOKE

August 30, 1979.

Record No. 771629.

Present: All the Justices.

*Edward A. Natt (Osterhoudt, Ferguson & Natt,* on brief) for appellant.

*Wilburn C. Dibling, Jr., City Attorney,* for appellee.

CARRICO, J., delivered the opinion of the Court.

On January 26, 1977, by motion for declaratory judgment filed in the court below, the Board of County Supervisors of Roanoke County (hereinafter, the County Board) sought a declaration that the City of Roanoke (hereinafter, the City) was required to comply with several sections of Title 15.1 of the Code of Virginia and, consequently, to secure the County Board's approval of the construction in the county of a water impoundment project for city use. Answering the motion, the City admitted that it planned to construct the project but denied that it was required to comply with the Code sections relied upon by the County Board.

Ruling that these Code sections were inapplicable to the City's project, the trial court dismissed the County Board's motion for declaratory judgment. Whether this ruling was correct is the sole question for decision.

The Code sections relied upon by the County Board are 15.1-37.1,[1]

---

[1] *§ 15.1-37.1. Certain counties, cities and towns may construct dams across navigable streams; permission from Chief of Engineers, Secretary of Army and State Attorney General; approval of governing body.*—Any county, city or town authorized by its charter or by general law to construct a dam in connection with its public water supply system and which has secured permission from the Chief of Engineers and the Secretary of the Army and authorization of the Attorney General of Virginia with the consent and approval of the Governor, is hereby authorized and granted the right to construct such dam in and across the bed of any navigable river, stream or tributary in this State; provided, however, such dam shall not be constructed nor any land acquired therefor when the dam would be located in another political subdivision without the approval of such political subdivision's governing body; provided, further, that no such approval shall be required where such dam is in the process of construction, or for which the site has been purchased or for which plans for construction have been filed with any appropriate agency of the federal, State, or local government on or before July one, nineteen hundred seventy-six.

In any case in which the approval by such political subdivision's governing body is withheld the party seeking such approval may petition the Chief Justice of the Supreme Court of Virginia for the convening of a special court, pursuant to §§ 15.1-37.1:1 through 15.1-37.1:7 of the Code of Virginia.

15.1-332.1,[2] and 15.1-456,[3] all parts of Title 15.1 which relates to "Counties, Cities and Towns." So far as pertinent here, § 15.1-37.1 provides that, under certain circumstances, a county, city, or town, in connection with its public water supply system, may construct a dam or acquire land therefor in another political subdivision but not with-

---

[2] *§ 15.1-332.1. Approval necessary for impoundment of waters.*—Notwithstanding any provisions to the contrary in article 6 (§ 15.1-332.1 et seq.), 7 (§ 15.1-341 et seq.) and 8 (§ 15.1-349 et seq.) of this chapter after July one, nineteen hundred seventy-six, no county or municipality shall impound any waters in the Commonwealth within the boundaries of another county or municipality without first obtaining the approval of such county or municipality to such proposed impoundment of waters; provided, however, no such approval shall be required where an impoundment for such waters is in existence, or in the process of construction, or for which the site has been purchased, or for which plans for construction have been filed with any appropriate agency of the federal, State, or local government on or before July one, nineteen hundred seventy-six.

In any case in which the approval by such political subdivision's governing body is withheld the party seeking such approval may petition for the convening of a special court, pursuant to §§ 15.1-37.1:1 through 15.1-37.1:7 of the Code of Virginia.

[3] *§ 15.1-456. Legal status of plan.*—Whenever the local commission shall have recommended a comprehensive plan or part thereof for the county or municipality and such plan shall have been approved and adopted by the governing body, it shall control the general or approximate location, character and extent of each feature shown on the plan. Thereafter, unless such feature is already shown on the adopted master plan or part thereof, no street, park or other public area, public building or public structure, public utility facility or public service corporation facility other than railroad facility, whether publicly or privately owned, shall be constructed, established or authorized, unless and until the general location or approximate location, character, and extent thereof has been submitted to and approved by the local commission as being substantially in accord with the adopted comprehensive plan or part thereof. In connection with any such determination the commission may, and at the direction of the governing body shall, hold a public hearing, after notice as required by § 15.1-431.

The commission shall communicate its findings to the governing body, indicating its approval or disapproval with written reasons therefor. The governing body may overrule the action of the commission by a vote of a majority of the membership thereof. Failure of the commission to act within sixty days of such submission, unless such time shall be extended by the governing body, shall be deemed approval. In the case of approval the owner or owners or their agents may appeal the decision of the local commission to the governing body within ten days after the decision of the commission. The appeal shall be by written petition to the governing body setting forth the reasons for the appeal. A majority vote of the governing body shall overrule the commission.

Widening, narrowing, extension, enlargement, vacation or change of use of streets or public areas shall likewise be submitted for approval, but paving, repair, reconstruction, improvement, drainage or similar work and normal service extensions of public utilities or public service corporations shall not require approval unless involving a change in location or extent of a street or public area.

out the approval of the governing body of the other political subdivision; § 15.1-332.1 provides that no county or municipality shall impound any waters within the boundaries of another county or municipality without first obtaining the approval of the other county or municipality;[4] and § 15.1-456 provides that no public utility facility, whether publicly or privately owned, shall be constructed in any locality that has adopted a comprehensive development plan unless the facility is shown on the plan or is thereafter approved by the locality.[5]

The City says that it is not required to comply with the foregoing Code sections because it is exempted by Code § 15.1-1, when read in conjunction with a provision of its charter, § 2(9). Code § 15.1-1 provides as follows:

> "Except when otherwise expressly provided, the provisions of this title shall in nowise repeal, amend, impair or affect any other power, right or privilege conferred on cities and towns by charter or any other provisions of general law."

In pertinent part, § 2(9) of the City's charter empowers it:

> "To acquire in any lawful manner in any county of the State, or without the State, such water lands, and lands under water as the council of said city may deem necessary for the purpose of providing an adequate water supply for said city and of piping or conducting the same; to lay all necessary mains; to erect and maintain all necessary dams, pumping stations and other works in connection therewith . . . ." Acts 1952, ch. 216.

It is the City's position that the charter provision quoted above grants it the authority to acquire such lands in the county to provide an adequate water supply as its council may deem necessary and that Code § 15.1-1 preserves this power inviolate against any provision of Title 15.1 that does not *expressly* "repeal, amend, impair or affect" the power. Code §§ 15.1-37.1, -332.1, and -456, relied upon by the County, do not expressly affect the exercise of the power conferred by its charter, the City argues, and thus the charter provision prevails over the Code sections.

---

[4] Whether the City's proposed project comes within any of the exceptions enumerated in §§ 15.1-37.1 and -332.1 is not at issue in this appeal.

[5] It is undisputed that the County of Roanoke has adopted portions of a comprehensive plan, including a community facilities plan, and that the City's proposed water impoundment project is not shown on the plan. Apparently, the City has not sought the County's approval of the project.

■ We disagree with the City. Section 2(9) of the city charter deals with the subject of the City's power to acquire lands for the construction of dams and the development of its public water supply system. Code §§ 15.1-37.1 and -332.1 deal with precisely the same subject. But the Code sections contain caveats providing that a political subdivision cannot construct a dam or impound waters in another locality without the approval of the other locality. We believe that, in §§ 15.1-37.1 and -332.1, the General Assembly clearly has "otherwise expressly provided," in the language of § 15.1-1, that the exercise of the power granted the City under § 2(9) of its charter shall be affected by the caveats contained in the Code sections.

To make clearer what already is abundantly clear, we note that the City's power under its charter provision is to "acquire in any lawful manner" land in a county for the construction of a dam. But § 15.1-37.1 provides that a county, city, or town cannot even acquire land for a dam in another locality, much less construct the dam, without approval of the governing body of the other locality. Obtaining such approval, therefore, is a precondition to the lawful exercise of the power granted the City by its charter.

■ With respect to Code § 15.1-456, while this section does not deal specifically with dams and the impoundment of waters, it does relate to a "public utility facility . . . whether publicly or privately owned," and this language would include the project the City proposes in the present case. Section 15.1-456 is part of Chapter 11 of Title 15.1, entitled "Planning, Subdivision of Land and Zoning." Article 4 of that Chapter, which includes § 15.1-456, provides for the preparation and adoption, which may take place in stages, of a comprehensive plan for the physical development of a locality. Once adopted, the plan, or part thereof, according to § 15.1-456, "shall control the general or approximate location, character and extent of each feature shown on the plan." And, as has been noted, unless a feature, such as a public utility facility, is shown on an adopted plan, it shall not be constructed without approval of the governing body of the locality.

Much, therefore, of what has been said concerning §§ 15.1-37.1 and -332.1 may be said also with respect to § 15.1-456. In addition, however, we believe that the case of *City of Richmond* v. *County Board,* 199 Va. 679, 101 S.E.2d 641 (1958), bears directly upon the question whether the City in this case must comply with § 15.1-456. There, the charter of the City of Richmond authorized the city to "establish, maintain and operate, within or without the city, a jail for the confinement of prisoners." The county, pursuant to authority granted by the statutory ancestor of Title 15.1, had enacted a zoning

ordinance and had established a district for jails and jail farms. The city proposed to construct a jail in the county outside the district established therefor. The city cited Code § 15-2 (now Code § 15.1-1) as the reason it was not required to comply with the county zoning ordinance. We held that the Code section did not exempt the city from compliance with the county zoning ordinance. Here, Code § 15.1-1 does not exempt the city from compliance with § 15.1-456.

We conclude, therefore, that the County Board was entitled to a declaration that the City was required to comply with Code §§ 15.1-37.1, -332.1, and -456. Accordingly, we will reverse the judgment of the trial court and remand the case for entry of an order declaring the rights of the parties consistent with the views expressed in this opinion and for such further proceedings as the parties may deem necessary.

*Reversed and remanded.*