CITY OF NORFOLK, ET AL.

V.

NATHAN E. VADEN, JR.

Record No. 860609

January 13, 1989

Present: Carrico, C.J., Poff,* Compton, Stephenson, Russell, Thomas, and Whiting, JJ.

---

\* Justice Poff prepared and the Court adopted the opinion in this case prior to the effective date of his retirement on December 31, 1988.

*Norman A. Thomas, Assistant City Attorney (Philip R. Trapani, City Attorney; Harold P. Juren, Deputy City Attorney*, on brief), for appellants.

*Neil C. Bonney (Robert M. White; White and Selkin*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

The litigation leading to this appeal was initiated by bill of complaint filed by a former city police officer against his former employer. The chancellor heard the evidence *ore tenus.*

From 1977 until 1983, the City of Norfolk had employed Nathan E. Vaden, Jr., as a police officer. Vaden resigned in good standing in 1983 and worked for a year with Greyhound Bus Lines. In February 1984, the City reinstated Vaden on a probationary basis. On November 24, 1984, the police cruiser Vaden was driving ran off the surface of Interstate 64, struck the guard rail in the median strip, and slid along the rail a distance of 570 feet. Using his radio transmitter, Vaden reported that a Colt automobile had swerved into his lane of travel and forced him off the road.

Three of Vaden's superior officers arrived on the scene, and Vaden repeated what he had reported in the broadcast. He explained that he had not pursued the Colt because he thought police policy required him to remain at the scene of the accident. He could recall only the first three letters of the license plate on the Colt. Based upon Vaden's account of the accident, one of the officers prepared and filed a report that characterized the event as a hit-and-run accident.

Because the other two officers did not believe Vaden's story, the deputy chief of police ordered one of the officers, Corporal Steven Taylor, to conduct a second investigation. In his report, Taylor concluded that, considering the absence of skid marks on the road and the lack of heavy damage to the vehicle, "it appears [the car] drifted over, slid down the guard rail for some distance, then was corrected back into the traffic lane."

Lt. Earl W. Hanna, the division executive officer, confronted Vaden with Taylor's report. According to Vaden, Hanna told him that he must either resign or be terminated, that they "would

bring [him] up on charges for making a false report" if he did not resign, and that "if [he] would resign that they would give [him] a good recommendation when [he] went to another police department".

Hanna testified that he told Vaden that he would be required to take a polygraph test if he persisted in his account of the accident and that, if he failed the test, he would be terminated. Hanna said that "initially he denied it was a false report and within just a few minutes he said he took too much medication and dozed off." Hanna escorted Vaden into the office of Major O. C. Scellato, commanding officer of the division, where Vaden "admitted to the same thing". Scellato confirmed that Vaden had told him that he "was under medication and he had fell [sic] asleep and had the accident" and that Vaden admitted further that "no one forced [him] off the road".

Vaden surrendered his police badge and weapon and submitted his resignation. The report based upon Vaden's original account of the accident was removed from departmental files and replaced by a newly-prepared report based upon his admissions to Hanna and Scellato. Several months later, Vaden applied for employment with the Virginia Beach Police Department. The officer who investigated his application reviewed Vaden's personnel file, and Vaden submitted to a polygraph test. A Virginia Beach personnel selection board rejected Vaden's application. Its reasons, reduced to writing, included "[d]eception on the polygraph"; "problems handling stress"; "[l]ow score on . . . physical agility test"; and "poor employer recommendation."

Vaden filed a bill of complaint against the City of Norfolk and city manager, Julian Hirst (collectively, the City), asking the court to "reinstate complainant with back pay and benefits", to "direct the defendants to afford complainant a fair and impartial hearing", and to "order all false and derogatory information . . . removed from his personnel file".

In support of his prayer, Vaden alleged that his resignation was "involuntary and the result of duress"; that the City had "placed derogatory and false information in the complainant's official personnel file" and "disseminated [it] to complainant's prospective employer"; that the City's action "impairs complainant's liberty and property interests in that it affects complainant's good name, reputation, honor and integrity"; that "a stigma attached to his reputation which has impaired his job opportunities"; that "com-

plainant has been denied due process, in that at no time has he been given an opportunity to be heard in the matter"; and that "denial of a hearing constitutes an infringement of his liberty and property interests."

In a letter opinion, the chancellor ruled that Vaden was entitled to relief but to only part of the relief "prayed for in his suit". In a decree entered April 10, 1986 referencing his opinion letter, the chancellor ordered that the reports based upon Vaden's admissions to Hanna and Scellato and certain other adverse documents "be removed from the files . . . and destroyed and the originals substituted therefor in the files". On June 24, 1986, the chancellor entered another decree which suspended, pending appeal, "that part of the Court's April 10, 1986 decree requiring destruction of certain documents". The suspension was made "upon the condition that the defendants remove from the plaintiff's personnel file . . . [seven specifically] described documents and transmit them to the Court, to be sealed and made a part of the record on appeal".

The City assigns several errors. One is dispositive of this appeal. The City maintains that the trial court erred "when it decided the merits of this case upon a theory not pleaded in the bill of complaint, thereby rendering its judgment void." We agree.

The thrust of Vaden's allegations in his bill of complaint was that the City had coerced his resignation by threats and promises, and that the City had broken its promises and disseminated false information that stigmatized his reputation and damaged his prospects for employment. His prayer for equitable relief was based upon the theory that the City had impaired his liberty and property interests and, thus, had deprived him of due process of law. Vaden's counsel reaffirmed that theory in his opening statement. Citing the decision in *Board of Regents* v. *Roth*, 408 U.S. 564 (1972), counsel asserted that "[t]his case was brought under the 14th Amendment . . . which protects liberty and property interests." In response to a question from the bench at trial, counsel replied, "Your Honor, what we are arguing is a case of constitutional rights." Again, in closing argument he said, "The Court's role is to determine whether [Vaden's] liberty interests through the 14th and 5th Amendments have been infringed upon."

The chancellor made no mention in his letter opinion of Vaden's theory of tortious deprivation of constitutionally protected inter-

ests. Instead, he rested his ruling in the final decree upon his finding in the letter opinion that the City's promises and Vaden's resignation constituted "an agreement or contract between the City and Vaden and that contract has been breached to the detriment of Vaden." On brief, Vaden acknowledges that the due process issue "was not decided by the Trial Court" but that "[i]nstead the Trial Court . . . concluded that it would enforce the agreement the parties had entered."

Nothing in the bill of complaint states a cause of action for breach of contract or prays for specific performance of a contract. "The function of pleading is to inform the opposing party of the nature of the case to be made against him. That purpose would be defeated if it were permissible to allege one case and prove another." *Bolling* v. *Acceptance Corporation*, 204 Va. 4, 9, 129 S.E.2d 54, 58 (1963). If the rule were otherwise, "the pleadings, instead of being a shield to protect the parties from surprise, would be a snare to entrap them." *Wren* v. *Moncure*, 95 Va. 369, 375, 28 S.E. 588, 590 (1897).

> No court can base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed. Pleadings are as essential as proof, the one being unavailing without the other. A decree cannot be entered in the absence of pleadings upon which to found the same, and if so entered it is void.

*Potts* v. *Matheison Alkali Works*, 165 Va. 196, 207, 181 S.E. 521, 525 (1935) (citations omitted); *accord Ted Lansing Supply* v. *Royal Alum.*, 221 Va. 1139, 1141-42, 277 S.E.2d 228, 229-30 (1981).

We hold that the judgment entered below is void. We will reverse the decree and remand the cause to the trial court with instructions to dismiss the bill of complaint with prejudice and to release the records sealed by the chancellor and return them to the City for filing in the manner prescribed by law.

*Reversed and remanded.*