# CIRCUIT COURT OF KING GEORGE COUNTY

Caroline Guest et al.

v.

King George County
Board of Supervisors et al.

May 30, 1997

Case No. (Chancery) 95-84

BY JUDGE JAMES W. HALEY, JR.

The primary issue here for resolution is whether a Board of Supervisors and landowner provided sufficient evidence to render it "fairly debatable" that a rezoning was reasonable with emphasis upon the relation of the County's Comprehensive Plan to the rezoning.

The following summary, derived and quoted from Respondent's post-trial brief with insertions by the court, constitutes a fair statement of the background of the case.

On February 3, 1995, Respondent Hopyard Farm Limited Partnership ("Hopyard"), filed an application with the King George County Board of Supervisors ("Board") for the rezoning of approximately 566.3 acres of its land, consisting of portions of two parcels having a total of 992.3 acres (the "Hopyard Property"). It also applied for the issuance of a special exception permit for a golf course on the Hopyard Property.

On May 9, 1995, after a public hearing, the King George County Planning Commission (the "Planning Commission") recommended, by a vote of 8 to 2, that Hopyard's applications be denied on the ground the rezoning was not in accordance with the County's Comprehensive Plan. On November 21, 1995, the Board held its own public hearing regarding Hopyard's applications and

thereafter approved the rezoning and the special exception permit by a vote of 3 to 1, with one abstention.

As a result of the Board's action, 548.75 acres of the Hopyard Property were rezoned from a Limited Agricultural District (A-1) to a Multifamily Dwelling District (R-3) and 17.56 acres were rezoned from a Limited Agricultural District (A-1) to a Retail Commercial District (C-1). The remaining 425.97 acres of the Hopyard Property were not rezoned and remain in the Limited Agricultural District (A-1). The zoning map amendments were subject to extensive proffers relating to Hopyard's development of its Property for a golfing community.

The Hopyard Property is located along State Routes 3 and 607 in the southwest portion of King George County. Along its southerly border, the Property adjoins the Rappahannock River. Under the County's 1991 Comprehensive Plan, most of the Property is included in an area designated as an "Agricultural/Woodland Conservation Area." A similar designation applies to a body of land bordering upon the Potomac River to the northwest of the property and north of State Route 3.

The Hopyard Property is currently being used as a commercial turf farm. The area in the vicinity of the Property is generally rural in nature. However, State Route 3 is a four lane road and is a primary thoroughfare in the County. In addition, there are sand and gravel extraction and processing facilities along the Rappahannock River to the northwest and south of the Hopyard Property, as well as a meat packing plant to the south. A landfill and a power generation plant facility are located in the second "Agricultural/Woodland Conservation Area" adjoining the Potomac River.

The proposed Hopyard development is a mixed use, planned community targeted primarily towards retirees and second home owners, which will have a maximum of 898 detached and attached housing units, a 27-hole golf course, a commercial area, and a range of other recreational amenities. Hopyard has also set aside additional land for a wastewater treatment plant, a public use site, and approximately 351 acres of open space. The development is scheduled to be built out over approximately twenty years.

In support of its applications for zoning and a special exception permit, Hopyard submitted to the County, among other things, a set of initial proffers, a detailed preliminary master plan, an environmental assessment of the Property, a traffic impact analysis, and a fiscal impact study. In addition to the information submitted by Hopyard, the County received written comments regarding certain aspects of the proposed development from various state and local agencies. All of this information was made a part of the County's public file and was available to the Board and to the public.

After the Planning Commission recommended that Hopyard's applications be denied, Hopyard prepared an addendum to its traffic impact report and met with various citizen groups in the County to address their concerns about the potential impact of the development on the surrounding area. As a result of that work, Hopyard submitted a revised proffer statement to the County in November, 1995.

Through the proffers submitted to the County, Hopyard committed to (1) develop the property in accordance with the preliminary master plan, (2) limit the number of dwelling units to 898, (3) construct a central well system and a central sewer system (including a wastewater treatment facility) and dedicate both to the County's Public Service Authority, (4) place approximately 350 acres of the land in a permanent conservation easement, (5) construct certain road improvements to offset the impact of the development, and (6) implement a number of techniques to reduce the environmental impact of the development on the Property itself and the surrounding area.

The extent to which the proposed rezoning and the associated proffers complied with the County's Comprehensive Plan was thoroughly debated both before the Planning Commission and the Board.

This litigation was initiated by Caroline Guest and others (collectively "Guest") by declaratory judgment action against Hopyard and the Board.

The court heard testimony over a four day period and has reviewed the stipulated exhibits, those additional exhibits submitted at trial, and the post-trial briefs of counsel.

The amendment of a zoning ordinance is a legislative act presumed to be valid and reasonable. *Bollinger v. Board of Supervisors,* 217 Va. 185, 186, 227 S.E.2d 682, 683 (1976). Such an amendment "will not be disturbed by a court absent clear proof that the action is unreasonable, arbitrary, and bears no reasonable relation to the public health, safety, morals, or general welfare." *City of Virginia Beach v. Harrell,* 236 Va. 99, 101, 372 S.E.2d 139, 141 (1988). Procedurally, if at trial a challenger to the rezoning offers probative evidence of unreasonableness, the burden of producing evidence of reasonableness shifts to the governing body, to show that the propriety of the rezoning was fairly debatable. *City Council of Salem v. Wendy's,* 252 Va. 12, 15, 471 S.E.2d 469, 471 (1996); *Richardson v. City of Norfolk,* 252 Va. 336, 338, 477 S.E.2d 512, 513 (1996); *Barrick v. Board of Supervisors,* 239 Va. 628, 630, 391 S.E.2d 318, 319 (1990).

A rezoning "may be said to be fairly debatable when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions." *Fairfax County v. Williams,* 216 Va. 49, 48, 216 S.E.2d 33, 40 (1975); *Board of Supervisors v. Snell Const. Corp.,* 214 Va.

655, 658-59, 202 S.E.2d 889, 892-93 (1974). If the rezoning is fairly debatable, the governing body's legislative zoning decision must be sustained. *Fairfax County v. Southland Corp.,* 224 Va. 514, 522-23, 297 S.E.2d 718, 722 (1982); *Ames v. Town of Painter,* 239 Va. 343, 348, 389 S.E.2d 702, 704 (1990). "On judicial review, a court is limited to a determination whether the decision which resulted from the legislative action was reasonable." *Fairfax County v. Miller & Smith,* 242 Va. 382, 384, 410 S.E.2d 648, 650 (1991). See also, *Fairfax County v. Jackson,* 221 Va. 328, 335, 296 S.E.2d 381, 386 (1980).

In the present case, the court held at trial that Guest had offered sufficient probative evidence of unreasonableness to rebut the presumption of legislative validity and to require the production of evidence by the Board and Hopyard. Accordingly, the issue for resolution narrowed to that set out in Part I of this opinion, that is, whether the Board offered sufficient evidence to render the zoning decision "fairly debatable."

Code of Va. § 15.1-446.1 requires local planning commissions to "prepare and recommend" to the local governing body a comprehensive plan which "shall be general in nature, in that it shall designate the general or approximate location, character, and extent of each feature shown on the plan [and] show the commission's long-range recommendations for the general development of the territory covered by the plan …."

Each member of a planning commission is appointed to the commission by the governing body. Code § 15.1-437. The power to adopt, disprove, amend, or revise all or any portion of a comprehensive plan, however, lies solely with the governing body of a jurisdiction elected by the citizens of that jurisdiction. Code §§ 15.1-450 through 15.1-453. The Supreme Court:

> has uniformly held that the power to exercise legislative authority may not be removed from the control of the local legislative representatives of the people. See *Mumpower v. Housing Authority,* 176 Va. 426, 454, 11 S.E.2d 732, 743 (1940). See also, *Laird v. City of Danville,* 225 Va. 256, 261, 302 S.E.2d 21, 24 (1983) … The zoning and rezoning of property is a wholly legislative function and can be exercised only by the board of supervisors in a county … [and which cannot be delegated] … to a non-legislative body.

*Fairfax County v. Fleet Industrial Park,* 242 Va. 426, 432-433, 410 S.E.2d 669, 472 (1991).

A comprehensive plan is one of approximately ten relevant factors required to receive "reasonable consideration" by a governing body in zoning matters.

Code § 15.1-490. "The weighing of the relevant factors is a legislative function reserved to the zoning authority." *Fairfax County v. Miller & Smith, Inc.*, 242 Va. 382, 384, 410 S.E.2d 648, 650 (1991). Where, as in the instant case, the zoning involves proffers by the applicant, as permitted by Code §§ 15.1-491.1 through 15.1-491.4, those proffers shall be in accordance with the comprehensive plan. Code § 15.1-491.2:1.

With respect to the legal status of a comprehensive plan, the plan controls "the general or approximate location, character and extent of each feature shown on the plan" and planning commissions are to determine if a proposed rezoning is "substantially in accord with [the plan] and communicate its findings to the governing body." However, "[t]he governing body may overrule the action of the commission by a vote of the majority of the membership thereof." Code § 15.1-456.

A comprehensive plan "is merely a guide for development, rather than an instrument of land use control." *Fairfax County v. Williams*, 216 Va. 49, 59-60, 216 S.E.2d 33, 41 (1975). A comprehensive plan "is not a zoning ordinance but only a guideline for zoning ordinances. *Fairfax County v. Snell Corp.*, 214 Va. 655, 660, 202 S.E.2d 889, 894 (1974)." *Board of Sup. v. Safeco*, 226 Va. 329, 335, 310 S.E.2d. 445, 448 (1983). A court is to give weight to the manner in which a governing body itself interprets its own comprehensive plan. *Fairfax County v. Williams, supra.* One commentator has stated that these Supreme Court decisions refer "to the comprehensive plan as an advisory guide that does not bind the locality." Foote, *Planning and Zoning in Virginia*, chap. 10, pp. 10-23. (1996).

In *Loudoun County v. Lerner*, 221 Va. 30, 37, 267 S.E.2d 100, 104 (1980), the Supreme Court stated:

> While the minimum standards of the Comprehensive Plan may only be guidelines and not requirements to be applied inflexibly by the Board, it was still a matter within the Board's discretion to decide whether to adhere to those standards or to follow some other reasonable approach in determining whether to grant or deny the rezoning application.

The current Comprehensive Plan ("Plan") of King George County was adopted in 1991. In what can best be described as an introduction, the document states that "the third characteristic of a Comprehensive Plan is that it be *general*. [Emphasis in original.] This feature is usually interpreted such as to focus the Plan's attention on major development policy and major physical design rather than such specifics as exact site location, detailed cost

estimates, engineering design specifications and means of financing public improvements."

In Chapter IV of the Plan, entitled "Development Issues," the Plan notes that King George County is a "rural locality. It is this characteristic that the County is desirous of maintaining while still accommodating a moderate amount of growth."

Another issue addressed in this portion of the Plan is a balance of housing types. "A choice of units and life styles should be provided to meet the needs of the existing and future residents of the County." Towards that end, "King George must be willing to investigate and consider new techniques of development."

As noted above, the Hopyard Property is located in an "Agricultural/Woodland Conservation Area" within the Plan. Each party to this litigation stresses portions of this designation in support of their respective positions.

In these areas, development is to be "discouraged. Land use planning ... must place environmental and agricultural protection as the highest priority ... no extension of public water or sewer systems should be approved ... density should be 1 dwelling unit per 10 acres ... major subdivisions should not be allowed ...."

However, this portion of the Plan for the area continues: "For those who wish to construct on smaller individual lots ... innovative methods of preserving open space within these sections should be made available as alternatives to standard development." And in contrast to the view expressed above concerning public utility facilities, this portion of the Plan for the area nonetheless states: "The exact placement of these [housing] units will depend on the ability of on-site water and sewer to function properly."

A fair summary of the goal of the Plan for Agricultural/Woodland areas might be expressed as one of moderate growth, especially with respect to housing, providing proposed projects are reasonably consistent with and give significant assurances for preserving open space and protecting the environment.

Since the court has held Guest met the burden of requiring the Board and Hopyard to produce evidence of reasonableness, a brief summary of the Complainants' evidence suffices, but more detail is to be given to that produced by the Respondents' in rebuttal.

Robert Michael Chandler and Albert Jack Stodgehill, the later of whom prepared King George County's first comprehensive plan in 1979, both qualified as planning experts, and Ronald M. Maupin, Esquire, an attorney who qualified as an expert in zoning matters, testified the Hopyard project

conflicted with the Plan. Michael L. Siegal, a financial analyst, testified that the County Public Service Authority would lose money as a result of the construction of public utility facilities on the Property. Stewart M. Patz, an economic consultant, testified there was little market for the Hopyard project. Dr. Thomas Muller, a fiscal impact consultant, stated the Hopyard project would cost King George County $2.5 to $7 million over twenty years, based primarily upon school population impact. Richard D. Klein of "Community and Environmental Defense Services" opined, as the name of his business implies, that the Hopyard project did not adequately address environmental issues, including water quality control.

Gary Clower, president of the Clower Group, which provides landscape architecture and land planning, testified for the Board. Mr. Clower prepared the preliminary master plan for development of the Property, compliance with which was one of Hopyard's proffers. In his own business since 1975, Mr. Clower's larger planning projects included West Creek in Goochland County, Stony Point, Commonwealth Center, Brandermill, and Willow Commons, all in the Richmond area. His designs have won awards from the Virginia Society of Landscape Architects.

The master plan and other reports he and his staff prepared (jt. exs. 8-12), as he testified, were specifically developed to protect the rural nature of the Property and the Rappahannock River and its tributaries which run through the Property. The limited commercial proposed use was located only along State Route 3, a four-lane divided highway along which commercial enterprises, included within the Agricultural/Woodland Area, are already in existence. That area, and in addition, the fire and rescue station, library, the golf course and swimming pool, the treatment facility, and the school site, all would be buffered by 100 feet high landscape berms between all roadways and the Rappahannock River. Residential houses would be of mixed nature, with a density of one per acre. However, each residential area is to be clustered and bermed to permit the overall retention of more open space. While this density is greater than that recommended by the Plan, there are approximately 100 contiguous parcels to the west of the property, totaling over 675 acres within the Agricultural/ Woodland Area, already zoned A-2, which permits one unit per two acres, duplexes lowering the density to one per acre. This is the same density sought by Hopyard.

Clower pointed out that under the A-1 existing zoning of the Property and under the King George Subdivision ordinance, Hopyard could by right divide its property into ten acre lots of only 100 yards width along all existing roads touching the Property and along the Rappahannock River itself, with each using individual wells and septic tanks rather than central facilities. By

contrast, the proffer includes a central well system and sewage treatment facility more environmentally acceptable. In addition, by right under existing A-1 zoning, the owner could cut down almost every tree on its property. Clower pointed out that over 350 acres in the 898 acres owned by Hopyard would be designated as a perpetual conservation easement. He concluded the project was in accord with the goals of the Comprehensive Plan of King George County.

The Board qualified Eldon James as an expert in county planning, finance, and operations. James served as the director of King George County's Department of Recreation, as the county's Director of Planning and Zoning from 1988 to 1989, during which the current Comprehensive Plan was developed, and as the County Administrator from 1989 to 1995, during which the current Plan was adopted by the Board of Supervisors. Among other matters as Administrator, he prepared annual budgets, analyzed long term revenue and expenses, development fiscal impacts, traffic and school population projections, prepared plans for capital public improvements, obtained grant/loans for the Public Service Authority, for whom he wrote the regulations, and had overall responsibility for planning and zoning.

James pointed out that at present there existed four sand and gravel mining operations and a meat processing and packing plant near or contiguous to the Property, all fronting on the Rappahannock River and all within the same Agricultural/Woodland Area as the Property and all zoned industrial. He also pointed out a substantial number of rezonings within both[1] Agricultural/Woodland areas from A-1 to more intensive use, including commercial uses, since adoption of the original Plan. These rezonings total over 5,900 acres. One rezoning in 1995 was for 165 acres adjacent to the Hopyard property from A-1 to Industrial.

James specifically rebutted Dr. Muller's methodology as to school population and associated costs and testified as to landfill revenue, public service authority revenue, and general tax revenue. His testimony the court finds substantially more cogent and credible than that of Dr. Muller, in part because of James' historical association with and responsibilities for King George County. James estimated the fiscal impact of the Hopyard project as positively netting the county, using three alternative methods of calculation, either $7.5, $9.2, or $10 million over the same period as used by Dr. Muller.

Of particular significance to this cause was James' testimony as to the legislative origin of the following consecutive sentences from the 1991 Plan: "In areas (within Ag/Wood) the density should be 1 dwelling unit per 10 acres.

---

[1] As set forth above, there is also an Agricultural/Woodland Area designated adjacent to the Potomac River, which borders King George on the northeast.

For those who wish to construct on smaller individual lots in these areas, innovative methods of preserving open space within these sections should be made available as alternatives to standard development." As noted above, James was County Administrator when the 1991 Comprehensive Plan was adopted.

The following is from the James transcript at pages 49-51:

Q. Do you personally know whether [the quoted language] was contained in ... the initial draft of the comprehensive plan ... ?

A. The second sentence, the one that begins "for those who wish ..." was not included in the original draft, and that was added as the process developed, that was added specifically at the direction of the Board of Supervisors ....

Q. Do you know why this particular language was added to the plan?

A. There was quite a bit of discussion about several changes to the plan, and flexibility was the key in dealing with most of those. I remember a specific point being made by one of the Board members, and I could not recall which one, that we do not know what types of technologies will be out there in the future, that might not give us a way to protect the environment, which is the major goal of the Ag and woodland conservation area, and that one dwelling per ten acres might be too strict an approach, and would restrict technologies that may leave better opportunities to protect, even at a higher density.

James went on to point out that the Board of Supervisors had since the adoption of the current plan in 1991 already rezoned for two communities, Eagle Bay with 337 acres and 425 units with a golf course and Kingsport with 1,400 acres and a mile and one-half shoreline and to include a conference center, marina, etc., both in the Potomac Agricultural/Woodland Area.

James concluded that the Hopyard project was consistent with the 1991 Plan in that it permitted moderate growth while mandating the permanent preservation of wooded open space and protecting the Rappahannock River in particular and the environment in general.

Richard G. Little testified on behalf of the Board and Hopyard. Little holds an M.S. in Urban-Environmental Studies, is a member of the American Institute of Certified Planners and the American Planning Association, served as Chief of the Public Facilities Branch of the Department of Comprehensive

Planning for Fairfax County from 1981 to 1984, and from 1984 to 1989 was Director of Comprehensive Planning for that County. Director of his own planning firm since 1989, Little has qualified as an expert in planning and zoning in Fairfax, Prince William, Stafford, and other counties.

Little noted that the complexity of comprehensive plans in Virginia varied greatly. Some were merely policy statements. Others are extremely detailed on almost a parcel by parcel basis. He characterized the King George Comprehensive Plan as "definitely [one of] policy and guidance" alone.

Little testified that with respect to environmental protection, the proffer to exceed the setback requirements of the Chesapeake Bay Preservation Act (Hopyard Proffer 12b is that phosphorous loading of groundwater will be 40% less than existing loading), the construction of enhanced storm water run-off and the sewage treatment plant, which he noted was far superior to individual septic systems, all met the goal of the Plan. He added that no water or sewer lines were being "extended" from off-site, the effect of which would open off-site areas to development, but were self-contained within the project.

The Plan, he noted, recommended that Agricultural/Woodland areas retain their rural character. That goal of the Plan was met, he testified, by the use of cluster housing and the bermed areas along Route 3 for commercial use. Of great support of the goal of maintaining a rural character, he testified, was the designation of 351 acres within the development as a permanent conservation easement. He noted that any roads were to be completed to VDOT specifications. Introduced as exhibits demonstrating Little's testimony was a compliance matrix (Ex. M) dealing specifically with the Plan.

Little testified that "the Planning Commission is an advisory body" and that "a comprehensive plan is one the the factors they [a governing body] should consider, but they also consider such things as the existing use and character of the area, the nature of the subject property, trends in growth and development, the suitability of the land for various uses, availability of transportation, infrastructure, and other public facilities, as well as environmental and natural features." (Little transcript, p. 24.)

Little characterized the "over-arching goal" of the Plan as "environmental protection" with a secondary goal of land use limitations allowing moderate but limited growth.

In summary, Little concluded that "based on my matrix [Ex. M] here, I think it [the rezoning] definitely complies with the plan."

With respect to the reasonableness of the proposed rezoning, Little prepared an analysis introduced as Exhibit N. This exhibit, and Little's testimony, dealt with soil conditions, the central well and sewage treatment infrastructure, the mix of residential types in clustered areas, and related matters. He noted that

growth projections for King George by the Bureau of the Census and the Virginia Employment Commission were 80 to 85 new residences per year, and that accordingly the Hopyard build-out of 40 to 45 residences per year indicated a market for the project. He further noted the rezoning history of property in Agricultural/Woodland areas with the Board, with some consistency, permitting rezoning not dissimilar to and often more intensive than Hopyard.

Little concluded that "the development fits the definition of reasonable land use." Introduced as Joint Exhibit 40 is a written overview setting forth Little's position on the rezoning action. In that report Little states: "I believe that the decision of the Board of Supervisors ... to approve zoning ... and attendant proffers was a reasonable legislative exercise of its zoning ... powers." (Jt. Ex. 40, p. 10.)

Ian G. Frost, assistant division manager of RUST Environment & Infrastructure, of Glen Allen, Virginia, testified, as contained in Joint Exhibit 7, that he had reviewed the project with respect to the Rappahannock River and its tributaries, floodplains, wetlands, cultural resources, flora and fauna, Chesapeake Bay area preservation areas, and water supply and potability. Setbacks exceed Chesapeake Bay Preservation requirements. All streams are protected by "greenways." Except for roadways, there will be no encroachment upon the 100 year floodplain boundaries or upon wetlands. The King George County Zoning ordinance defines Resource Protection Areas as tidal wetlands, nontidal wetlands connected by flow to the tidal wetlands, tidal shores, and 100 foot buffer areas adjacent to any of these areas, all of which restrictions are applicable to Hopyard. The well system impact will be "minimal" as the aquifer system "is not stressed."

Waste water impact will likewise be minimal, in Frost's view, as the system must comply with Virginia Department of Environmental Quality standards. By letter dated December 19, 1996 (Jt. Ex. 30), it is noted, that department issued an approval and permit for Hopyard's proposed treatment system, which includes effluent limitations and monitoring requirements. This approval was based upon an application to VDEQ prepared by RUST Environmental & Infrastructure, introduced as Joint Exhibit 28.

A wildlife inventory prepared for Hopyard (Jt. Ex. 14) maintains that the project "has preserved vegetative buffers along all streams and swales in order to protect ... wildlife ... and provide ... an excellent habitat."

William R. Johnson, owner of the Johnson Real Estate Services, Inc., of Fredericksburg, Virginia, qualified as an expert in land appraisal and development impact. As set forth in Joint Exhibit 38, he concluded that, based upon market projections and comparisons to similar developments in the

Fredericksburg area, a substantial market existed for the Hopyard project and that "the development will have a positive impact on the real estate values of the surrounding properties." (Jt. Ex. 38, p. 32.)

Steven J. Jacobs, who holds an undergraduate degree in city planning and a masters degree in business administration and is a principal in Robinson, Farmer, Cox and Associates, C.P.A.s in Richmond, has developed fiscal impact and capital improvement financial forecasts for over fifteen Virginia counties. Jacobs concluded, as set forth in Joint Exhibit 42, that " the Hopyard Planned Unit Development will not cause an adverse impact on King George County's receipts for state aid to education."

This body of rebuttal evidence offered by the Board and Hopyard, as summarized above, requires the court to find that the propriety of the rezoning of the Hopyard property is "fairly debatable" and would lead "objective and reasonable persons to different conclusions."

Other issues are as follows.

(1) Complainants maintain that the Board had to conduct a specific "456" review (Code § 15.1-456, entitled "Legal status of plan") and make a written finding in overruling the Planning Commission's conclusion that the rezoning was not in accord with the Comprehensive Plan. This written finding, Guest argues, must be independent of the action of the board in granting the rezoning.

A governing body need only "be aware of the recommendations of the … planning commission …." *Henrico County v. F. & W., Inc.* 222 Va. 218, 226, 278 S.E.2d 859, 864 (1981). In *I.D.A. v. LaFrance Cleaners,* 216 Va. 277, 282, 217 S.E.2d 879, 883 (1975), the Court stated:

> in the exercise of its legislative discretion, a legislative body is presumed to have been cognizant at the time it acted of all existing facts and circumstances bearing upon the public policies and private rights relating to their action.

The record makes definite that the Board was clearly aware of the recommendations of the Planning Commission and the conclusion of that body that the rezoning was not in accord with the Comprehensive Plan when it considered the rezoning.

In addition, Richard Little testified that a Board does not have to take specific independent action to conduct such a "456 Review," which in any event is limited to public facilities, because "by approving the proffered plan, that is, in fact, considered action on the part of the whole development."

Finally, in *Concerned Taxpayers v. County of Brunswick,* 249 Va. 320, 325-326, 455 S.E.2d 712, 715-716 (1995), the court held:

> [Concerned Taxpayers] … state that, since the proposed landfill and its recycling center were not shown on the County's comprehensive plan, the Board could not overrule the action of the Planning Commission and authorize the CUP [conditional use permit] unless the Board made specific written findings regarding the proposed CUP's accord with the comprehensive plan, pursuant to Code § 15.1-456 …. Code § 15-1-456 permits a governing body to overrule the action of the local commission … on its own motion by a majority vote. In addition … Code § 15.1-456 … [does not require] … the governing body to make specific findings when it grants a CUP for a use that is not shown on the comprehensive plan.

In light of the foregoing, the court concludes the Board had no duty to undertake a formal "456 review" or make any specific written finding overruling the recommendation of the Planning Commission.

(2) The Board and Hopyard maintain that Complainants are limited by their pleadings to a "spot zoning" challenge to the rezoning rather than the broader issue of reasonableness of the rezoning.

The declaratory judgment action contained two counts. The first, dealing with public notice issues, was abandoned by Guest. The second, Count II, was captioned "Illegal Spot Zoning." The Board argues that Guest's evidence at trial should have been limited to, and the court should only consider, evidence related to spot zoning.

Within Count II, however, Guest alleged that the rezoning was arbitrary and capricious (paragraph 32) and not in accord with the Comprehensive Plan (paragraph 31).

The court ruled well before trial, and here reaffirms, that these pleadings sufficed to permit Guest to offer evidence supporting a broader challenge to the Board's action than one limited to spot zoning.

While it is true that judgment cannot be granted upon "facts not alleged, nor … upon a right … not pleaded …." *City of Norfolk v. Vaden,* 237 Va. 40, 44, 375 S.E.2d 730, 733 (1989), "the requirements for stating a cause of action are not so strict as to demand specificity beyond that necessary to 'clearly [inform] the opposite party of the true nature of the claim or defense' pleaded. Rule 1:4(d)." *Balzer and Associates v. The Lakes on 360,* 250 Va. 527, 531, 463 S.E.2d 453, 456 (1995).

The court's pre-trial ruling permitting the broader challenge was known to the Board and Hopyard and neither were prejudiced in preparation of their defense. Indeed, the majority of the evidence adduced at trial by the Board and Hopyard was in rebuttal of the broader claim. Finally, it is the allegations set forth in the pleadings, not their captions, that frame the issues and circumscribe the evidence admissible in support of those allegations.

(3) Guest maintains that the rezoning was "illegal spot zoning."

In *Wilhelm v. Morgan,* 208 Va. 398, 402-403, 157 S.E.2d 920, 924 (1967), the court adopted the following test for determining what constituted spot zoning:

> If the purpose of a zoning ordinance is solely to serve the private interests of one or more landowners, the ordinance represents an arbitrary and capricious exercise of legislative power, constituting illegal spot zoning; but if the legislative purpose is to further the welfare of the entire county or city as part of an overall zoning plan, the ordinance does not constitute illegal spot zoning even though private interests are simultaneously benefited.

See also, *Henrico County v. F. & W., Inc.,* 222 Va. 218, 226, 278 S.E.2d 859, 863-864 (1981).

The common element found in spot zoning cases is the rezoning of a particular parcel from an original classification identical to parcels similar in size and use and situated in close proximity to the parcel rezoned. That is not the factual situation in the present case. In addition, there is here insufficient evidence "with regard to legislative purpose, a critical element in the test for illegal spot zoning" to "conclusively establish illegal spot zoning as defined in *Wilhelm." Barrick v. Board of Sup. of Mathews County,* 239 Va. 628, 633, 391 S.E.2d 318, 320 (1990). Accordingly, the court finds that the rezoning was not illegal spot zoning.

(4) As noted above, Hopyard proffered the construction of a central sewer system and treatment plant on the Property to be dedicated to the existing King George County Public Service Authority. Code § 15.1-456(a) states in part that unless shown on the existing comprehensive plan "no ... public facility ... whether publicly or privately owned, shall be constructed ... unless ... [it] ... has been approved by the local commission as being substantially in accord with the comprehensive plan ...."

Relying on this provision, and citing *Board of Supervisors v. City of Roanoke,* 220 Va. 195, 257 S.E.2d 781 (1979), Guest maintains the Comprehensive Plan is in fact a zoning ordinance for decisions involving public facilities. In short, Guest argues that a Board of Supervisors is powerless to authorize the establishment of a public utility facility unless the local Planning Commission permits it by certifying the same is in accordance with the Comprehensive Plan.

Guest misreads the statute and the cited case. In *City of Roanoke,* the city proposed to create a water impoundment project for city use in the County of Roanoke. The city maintained its charter authorized it to construct the public facility without compliance with the county's zoning ordinance, including the provisions of Code § 15.1-456. Citing that portion of Code § 15.1-456 quoted above, the court held such compliance was required, but the court noted that "unless a feature, such as a public utility facility, is shown on the adopted plan, it shall not be constructed without approval of *the governing body of the locality.*" 220 Va. at 199, 257 S.E.2d at 783 (emphasis supplied). In addition, following the above quoted statutory language, Code § 15.1-456(b) directs the commission to communicate its findings to the governing body and then states: "The governing body may overrule the action of the commission by a vote of the majority of the membership thereof."

If followed to its logical conclusion, Guest's argument would deprive the citizens of a jurisdiction, acting through their elected representatives, to ever construct any future public utility not shown on the existing comprehensive plan, unless permitted to do so by a compliance certification of the appointed planning commission. The final power to authorize the construction of public facilities lies with the governing body, not the planning commission.

For the foregoing reasons, the court rejects Guest's argument on this point.

In conclusion, the court determines the evidence requires the court to find as facts (1) that the rezoning of the Hopyard property is "fairly debatable" under the standard set forth by Virginia case law, and (2) that the rezoning is reasonable and reasonably calculated to improve public health, safety, convenience, and welfare of the citizens of King George County and to plan for the future development of communities to that end, as is required by Code § 15.1-427, and (3) that the rezoning is neither unreasonable, arbitrary, nor capricious.

Finally, it should be firmly understood that the propriety of the rezoning of the Hopyard property is not one of policy debate as to the best use of land in the public domain. Rather, the property is owned by Hopyard, and its property rights as to its potential use are fundamental in a society based upon the rule

of law. The Hopyard rezoning was approved by the King George County Board of Supervisors by a 3 to 1 vote, with one abstention. A court should not "substitute its judgment for that of a legislative body" in zoning matters. *Southern Ry. v. Richmond,* 205 Va. 699, 706, 139 S.E.2d 82, 87 (1964). And it is disturbing that, in these times, litigants too often reject the democratic process and ask a court to usurp that process and nullify or reverse the decisions of those elected to make them.