# Richmond

## H. J. WILHELM, ET AL., ETC. ET AL. v. DR. E. B. MORGAN, ET AL.

December 4, 1967.

Record No. 6494.

Present, Eggleston, C.J., Buchanan, Snead, l'Anson and Gordon, JJ.

*Richard C. Rakes* (*E. C. Westerman, Jr.*; *Gentry, Locke, Rakes & Moore*, on brief), for appellants.

*John H. Thornton, Jr.* (*Woods, Rogers, Muse, Walker & Thornton*, on brief), for appellees.

GORDON, J., delivered the opinion of the court.

In September 1963, Dr. A. M. Hitt petitioned the Board of Supervisors and the Planning Commission of Botetourt County to rezone about 110 acres of his land from Agricultural to Industrial. As required by law the petition was referred to the Planning Commission for its recommendation to the Board. The Commission recommended against the rezoning.

The Board of Supervisors held a public hearing on November 15, 1963, at which persons were heard for and against the petition. The Board then adjourned the hearing until November 21, 1963 "to allow Dr. Hitt to file an amended petition".

Dr. Hitt filed an amended petition asking that an 8-acre tract within the 110-acre tract be rezoned to Industrial for use "as a quarry site" and "a stock pile site". Without referring the amended petition to the Planning Commission, the Board of Supervisors again heard persons for and against the rezoning at the reconvened meeting on November 21, 1963, and then adopted an amendment to the County's zoning ordinance. By the amendment the Board rezoned the 8-acre tract "from an Agricultural Zone (A-1) to an Industrial Zone (M-1)", as requested in Dr. Hitt's amended petition, and directed that "the Zoning Maps shall be changed in this respect".

Shortly thereafter Dr. E. D. Morgan and others filed this suit for a declaratory judgment. They contended in the trial court, as they do here, that the zoning amendment adopted by the Board of Supervisors on November 21, 1963 was invalid for two reasons: (1) The Board's failure to refer Dr. Hitt's amended petition to the Planning Commission was a fatal procedural defect, and (2) the zoning amendment constituted "spot zoning" and represented an unreasonable and arbitrary exercise of authority by the Board, which bore no substantial relationship to the public health, safety, morals or general welfare.[1] The Board and Dr. Hitt appeal from the trial court's decree sustaining the complainants' position on points (1) and (2) and declaring the zoning amendment "void, invalid and illegal".

[1] We can dispose of point (1) now. Code § 15.1-493 provides in part that "no zoning ordinance shall be amended . . . unless the governing body [the Board of Supervisors] has referred the proposed amendment . . . to the local commission [the Planning Com-

---

1. The relevant Virginia statute provides in part that the "[z]oning ordinance shall be for the general purpose of promoting the health, safety or general welfare of the public". Va. Code Ann. § 15.1-489 (Supp. 1966).

mission] for its recommendations". Va. Code Ann. § 15.1-493 (Repl. vol. 1964). (A requirement that proposed amendments be referred to the Planning Commission is also set forth in Article 12-1-3 of the Botetourt County Zoning Ordinance, adopted in 1960.)

Code § 15.1-493 provides further that the governing body shall hold at least one public hearing, pursuant to public notice as required by Code § 15.1-431 (Va. Code Ann. § 15.1-431 (Repl. vol. 1964)), before adopting any amendment to a zoning ordinance. After one public hearing has been duly held, Code § 15.1-493 empowers "the governing body . . . [to] make appropriate changes or corrections in the . . . proposed amendment; provided, however, that no *additional* land may be zoned to a different classification than was contained in the public notice without an additional public hearing after notice required by § 15.1-431". (Emphasis supplied.)

The complainants-appellees concede that the procedural requirements of the statute were met respecting Dr. Hitt's original request for the rezoning of the 110-acre tract. They argue, however, that the Board's failure to re-refer the matter to the Planning Commission, when Dr. Hitt subsequently requested the rezoning of only a part of the 110-acre tract, precluded the passage of the amendatory ordinance rezoning the smaller tract.

But Code § 15.1-493, which expressly empowers the Board of Supervisors to make changes in a proposed amendment to a zoning ordinance, imposes only one qualification: that the Board shall not pass an amendment that rezones more land than that described in the original public notice, without first giving the statutory notice of the proposal to rezone the larger tract and holding an additional public hearing. The statute does not require a second referral to the Planning Commission. We hold, therefore, that the trial court erred in ruling that the amendatory ordinance was invalid because of a procedural defect.

[2] We now turn to the question whether the trial court erred in declaring the amendatory ordinance "void, invalid and illegal" as arbitrary and capricious legislative action.

As already mentioned, Dr. Hitt requested the rezoning of the 8-acre tract for quarrying operations. The evidence does not disclose the manner in which the proposed quarrying operations would be performed; but it does disclose that Dr. Hitt requested the rezoning after he had contracted to furnish stone over a period of 8 to 9

months for use in the construction of a segment of Interstate 81 in Botetourt County.

The evidence comprised 12 exhibits and the testimony of a planning expert. The only exhibits that are relevant to the question before us are the Botetourt County Zoning Map and the transcript of the second public hearing before the Board of Supervisors. (The proceedings at the first hearing were not transcribed.)

The map shows that the vast majority of Botetourt County is zoned Agricultural. Two areas are zoned Residential, one of which encircles the town of Fincastle. Complainants' counsel refers to this residential area as the "historic ring"; he says "[o]bviously, this ring of restriction around Fincastle was a recognition of the wisdom of preserving an historic resource of incalculable value". There is an Industrial zone within the "historic ring", but the 8-acre tract owned by Dr. Hitt lies 200 to 250 yards outside the perimeter of the "historic ring".

The transcript of the second hearing includes statements by citizens of the County who opposed the rezoning, arguments of counsel and the announcement of the Board's decision to rezone the 8-acre tract.

Because the statements made by all citizens were to the same general effect, we will summarize only the statements made by two of them. One citizen said that the residential area around Fincastle "should be recognized and respected". He said further: "[W]e want industry which will do more good for the County than it could possibly do harm and I think this proposition here could be more harmful to the County than good . . . I'm a little bit afraid of the blasting . . . If this was an industry which would be of considerable aid to the County . . . I wouldn't oppose it; I would take my chances on it, but I don't think it is worth to Botetourt County what it is going to be in the way of liability . . .".

Another citizen expressed more strongly his belief that the operation of a quarry would be harmful. He said the quarry would produce "a lot of dust" and "a lot of noise", that each blast of dynamite would cause "every building in this Town [Fincastle] . . . to shake", and that trucks moving to and from the quarry site would create danger and congestion. But counsel for Dr. Hitt reminded the Board that expert witnesses at the first hearing had "testified that there would be absolutely no blast damage. There would be a minimal of dust and that the danger from any increased traffic would only be a normal occurrence, which is progress in the County".

At the conclusion of the hearing the Chairman announced the

Board's decision, by a vote of 2 to 1, to rezone the 8-acre tract from Agricultural to Industrial. In the course of his remarks, the Chairman expressed the opinion that the persons who protested the rezoning would not be unreasonably affected by the proposed quarry. He said that the Board had to consider "[w]hat is best for the County". He referred to Botetourt County's reputation for discouraging industry and the advisability of correcting the impression "[t]hat Botetourt County doesn't want any industry".

A planning expert, the only witness in this suit, gave his definition of "spot zoning" and expressed the opinion that the rezoning of the 8-acre tract constituted "spot zoning", as he had defined it.[2] When this expert was asked whether, in his professional opinion, the rezoning "bear[s] a reasonable relation to the safety, morals and general welfare of the owners [sic]", he answered "It does not". When asked to state his reasons for those opinions, the expert replied in essence that instead of rezoning the 8-acre tract, the Board should have amended the zoning ordinance to provide for the issuance of special use permits that would have permitted quarrying for a limited period of time.

Complainants contend that the evidence showed that the Board's action in amending the zoning ordinance was, as a matter of law, arbitrary and capricious and therefore invalid. We have laid down the following rules for determining whether a Board's action in passing a zoning ordinance can be upset:

" 'The legislative branch of a local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary. The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals, or general welfare. The court will not substitute its judgment for that of a legislative

---

2. The planning expert defined spot zoning "as that act of a zoning commission or a legislative body which permits a use for or group of uses in any given area of a locality which uses are diametrically opposed on a permanent basis to the uses planned or zoned around it to the detriment of harmonious development, thus not promoting the health, safety and general welfare of the public as outlined in Items 1 through 6, Section 15.1-489 of the State Code as revised June 30, 1962". He explained that this definition had been prepared by planning experts, with a particular view to guiding "young planners" who are called upon "to help communities draft zoning ordinances".

body, and if the reasonableness of a zoning ordinance is fairly debatable it must be sustained.' " *Southern Ry.* v. *City of Richmond*, 205 Va. 699, 706, 139 S.E.2d 82, 87 (1964).

The statements of the citizens at the second hearing did not aid the complainants in carrying their heavy burden of proof. The citizens directed their statements only to the fairly debatable questions whether the quarrying operations that Dr. Hitt proposed to conduct would constitute a nuisance and whether the detriment caused by the proposed operations would exceed the benefit.

Nor can we find any evidence of unreasonable, arbitrary or capricious action from the Chairman's remarks at the conclusion of the second hearing. He spoke of the advisability of encouraging industry in Botetourt County, which is not an improper motive;[3] but he did not say he voted for the rezoning only to encourage industry. He said that the Board had to consider "[w]hat is best for the County".

The complainants' expert expressed the opinion that the rezoning bore no reasonable relation to the safety, morals and general welfare of the "owners", probably intending to say "County" instead of "owners". He said that he would have adopted an amendatory ordinance providing for special use permits, rather than rezoning the 8-acre tract. So instead of giving a basis for his opinion, the expert in effect substituted his judgment for that of the Board of Supervisors.

The complainants' expert also expressed the opinion that the rezoning of the 8-acre tract constituted "spot zoning", as he had defined it (see n. 2, *supra*). Spot zoning or illegal spot zoning has been variously defined. See 8 *McQuillin, Municipal Corporations* § 25.83 (3d ed. 1965); 1 *Yokley, Zoning Law and Practice* §§ 8-2, 8-3 (3d ed. 1965). We now adopt the following test for determining whether a zoning ordinance constitutes illegal spot zoning:

If the purpose of a zoning ordinance is solely to serve the private interests of one or more landowners, the ordinance represents an arbitrary and capricious exercise of legislative power, constituting illegal spot zoning; but if the legislative purpose is to further the welfare of the entire county or city as a part of an overall zoning plan, the ordinance does not constitute illegal spot zoning even

3. For cases involving zoning ordinances that were prompted by improper motives, see *Board of Supervisors* v. *Carper*, 200 Va. 653, 107 S.E.2d 390 (1959), and *Board of Supervisors* v. *Davis*, 200 Va. 316, 106 S.E.2d 152 (1958).

though private interests are simultaneously benefited. *Kozesnik* v. *Township of Montgomery*, 24 N.J. 154, 173, 131 A.2d 1, 11 (1957).

As indicated by the language of the test, illegal spot zoning is arbitrary and capricious action of a special kind.

Faced with the presumption that the Board's action was valid, the complainants did not bear their burden of proving that the authorizing of quarrying operations on the 8-acre tract bore no reasonable or substantial relation to the public health, safety, morals or general welfare. See *Southern Ry.* v. *City of Richmond*, *supra*. The only evidence that tended to aid the complainants in carrying their burden was the opinion expressed by the planning expert that the rezoning bore "no reasonable relation to the safety, morals and general welfare"; and he could give no basis for this opinion. The complainants having failed to bear their burden, we must presume that the rezoning ordinance bore a reasonable or substantial relation to the public health, safety, morals or general welfare. So the evidence does not show that the Board acted solely to promote Dr. Hitt's private interests.

[3] The complainants contend that the Board rezoned the 8-acre tract without regard to any plan for the development of the County. In 1960 the Board adopted the "Botetourt County Zoning Ordinance" that established an overall zoning plan for the County.[4] This overall plan is reflected by the Zoning Map introduced in evidence, which divides the entire County into Agricultural, Residential, Business and Industrial zones. The fact that the Board rezoned an 8-acre tract for a use different from that of the surrounding land does not mean that the Board abandoned its overall zoning plan. See *Kozesnik* v. *Township of Montgomery*, *supra* at 167, 131 A.2d at 8. Because we have no evidence to the contrary, we must assume that the Board acted in furtherance of its overall zoning plan when it provided for an addi-

4. Code § 15.1-446 requires each local planning commission to prepare and recommend "a comprehensive plan for the physical development of the territory within its jurisdiction". Va. Code Ann. § 15.1-446 (Repl. vol. 1964). Complainants' counsel says that "Botetourt's Zoning Ordinance [adopted in 1960] follows a comprehensive plan of land use", apparently referring to the comprehensive plan provided for under Code § 15.1-446. He contends that when the Board rezoned the 8-acre tract, it did not follow or even consider "the Botetourt County plan for development". But complainants' counsel did not introduce any plan prepared by the Botetourt County Planning Commission or any evidence that the Board had adopted a plan prepared by the Commission.

tional Industrial zone in the County; that the Board rezoned the 8-acre tract for industrial use to further the welfare of the entire county as a part of an overall zoning plan. So the rezoning of the 8-acre tract did not constitute illegal spot zoning.

Because the complainants did not bear their burden of proving that the rezoning ordinance was unreasonable, arbitrary or capricious, we reverse the decree of the Circuit Court of Botetourt County and dismiss the bill of complaint.

*Reversed and final decree.*