# Susan Barrick, et al.

## v.

# Board of Supervisors of Mathews County, et al.

Record No. 890948

April 20, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Lacy, JJ., and Poff, Senior Justice

*John R. Walk (Hirschler, Fleischer, Weinberg, Cox & Allen*, on brief), for appellants.

*R. Terrence Ney; Breckenridge Ingles (M. Melissa Glassman; McClanahan Ingles; McGuire, Woods, Battle & Boothe; Martin, Hicks & Ingles*, on briefs), for appellees.

JUSTICE LACY delivered the opinion of the Court.

This is an appeal involving two rezoning ordinances in Mathews County, wherein we are asked to decide whether the trial court properly granted the governing body's motion to strike the contestants' evidence and dismissed the complaints.

On May 23, 1988, Susan Barrick and seven other residents of Mathews county (contestants) filed two bills of complaint alleging that the Board of Supervisors of Mathews County (Board) acted in an arbitrary and capricious manner in adopting two ordinances rezoning property in the county. The contestants asserted that the Board had illegally spot zoned a parcel owned by Gwynn's Island, Ltd. (Gwynn's Island) and one owned by Hudgins Point Estates, Inc. (Hudgins Point). The parcels, each located on the waterfront

and originally zoned Residential-1 (R-1), were rezoned as Business-2 (B-2), in order to allow condominium use on the two properties.

Prior to a joint trial, the parties stipulated to certain evidence and submitted memoranda to the trial court. At trial, the contestants offered the *ore tenus* testimony of Edward Z. Gray, a named plaintiff, and Col. William Rau, a resident of Mathews County and Chairman of the Mathews County Planning Commission. The contestants also introduced the deposition of Ted Costin, Director of Planning and Zoning for Mathews County.

At the close of the contestants' case, the trial court sustained the Board's motion to strike and dismissed both complaints with prejudice. We awarded the contestants an appeal.

When a local governing body passes a zoning ordinance, it is performing a legislative act, and as such, the ordinance carries a presumption of validity. A party seeking to invalidate a zoning or rezoning ordinance, must initially produce probative evidence of unreasonableness, which, if accomplished, shifts the burden to the local governing body to produce sufficient evidence of reasonableness to render this issue fairly debatable. If the governing body carries that burden, the zoning ordinance will be sustained. *Ames v. Town of Painter*, 239 Va. 343, 348, 389 S.E.2d 702, 704 (1990); *Board of Supervisors v. Carper*, 200 Va. 653, 660, 107 S.E.2d 390, 395 (1959).

Thus, the threshold issue for review in a case like this normally would be whether the contestants, considering the evidence in the light most favorable to them, introduced any probative evidence of unreasonableness. If so, the case would be reversed and remanded to allow the Board the opportunity to offer evidence indicating that the rezoning ordinances were reasonable. As forthright and well established as the above principles are, however, the procedural posture of this case makes it impossible to apply them mechanically here.

Normally, when a defendant moves to strike, only the plaintiff's evidence has been offered. Here, however, when the Board moved to strike, in addition to the contestants' evidence, a lengthy stipulation had been filed by the Board and the contestants. The stipulation included: the applications for rezoning and special exceptions, which also contained several proffers by Gwynn's Island and Hudgins Point; the reports prepared by the Director of Planning and Zoning for Mathews County recommending the rezoning for

the two parcels; the 1982 and 1989 Mathews County Comprehensive Plans; the 1987 Mathews County Zoning Ordinance; the minutes of the meeting of the Board of Supervisors at which the rezoning applications were adopted, including statements of Board members regarding the applications; and stipulations as to the change in residential density which would occur under the rezoning ordinances. Both parties relied on matters contained in the stipulation as support for their respective positions.

■ The trial court, rather than applying the customary standard for a motion to strike the plaintiff's evidence in a zoning challenge, evaluated all the evidence before it and sustained the motion to strike, not on the basis that the contestants failed to produce probative evidence of unreasonableness, but because they

> failed to meet their burden of proof in showing that the action of the Board of Supervisors in rezoning the subject properties was arbitrary and capricious and bore no substantial relationship to the public health, safety, morals and welfare of the citizens of Mathews County.

While the trial court did not follow the conventional procedural steps, it, nevertheless, resolved the ultimate issue based upon evidence produced by both the Board and the contestants. On appeal, we are presented with that same evidence, as well as briefs virtually identical to memoranda submitted to the trial court. Both parties are bound by the stipulated evidence. *Southeastern Tidewater Auth.* v. *Coley*, 221 Va. 859, 862-63, 275 S.E.2d 589, 591 (1981); *see Harris* v. *Diamond Const. Co.*, 184 Va. 711, 36 S.E.2d 573 (1946). Under these circumstances, we will review the record to determine whether the contestants produced probative evidence of unreasonableness, and, if so, whether the Board produced sufficient evidence of reasonableness to make the issue fairly debatable and the rezoning a valid exercise of its legislative power.

The gravamen of the contestants' case is that the action of the Board in rezoning the subject parcels from R-1 to B-2, with authorization for multi-family use, constituted illegal spot zoning. The rezoning was illegal, the contestants argue, because it resulted in a use which was not compatible with the surrounding area and was not consistent with the 1982 Comprehensive Plan and 1987 Zoning Ordinance.

The stipulated evidence established that all waterfront property was zoned for single family residential use under the R-1 designation or waterfront business use under the B-1 designation. The Gwynn's Island and Hudgins Point parcels are on the waterfront and within areas designated as "Medium Density Rural" in the 1982 Comprehensive Plan. This designation includes most of the developable waterfront and, as defined in the plan, was intended primarily to be for residential use, with lot sizes of one-half acre or more. Compatible commercial uses would be permitted.

The 1982 Comprehensive Plan anticipated development of multi-family housing in areas designated as "Village," and allowed up to 12 units per acre. Under the Zoning Ordinance, such housing was permitted only in the B-2, off-waterfront business classification, and then only by special exception.

The property surrounding the Gwynn's Island parcel is zoned B-1, R-1 and R-2. The B-2 zoning with special exceptions for multi-family development will allow the Gwynn's Island parcel to be developed to approximately two times the housing density of the surrounding property. The property surrounding the Hudgins Point parcel is zoned R-1, and the rezoning approved by the Board will permit that parcel to have a density four times that of the surrounding property.

The contestants submit that this evidence establishes that: (1) the density limits on waterfront property allowed by the rezoning violate both the 1982 Comprehensive Plan and 1987 Zoning Ordinance, and (2) the development of multi-family residences is incompatible with the single family use surrounding the parcels in issue.

■ In *Wilhelm* v. *Morgan*, 208 Va. 398, 404, 157 S.E.2d 920, 924 (1967), we stated that "illegal spot zoning is arbitrary and capricious action of a special kind," and we adopted a specific test for use in these types of cases.

> If the purpose of a zoning ordinance is solely to serve the private interests of one or more landowners, the ordinance represents an arbitrary and capricious exercise of legislative power, constituting illegal spot zoning; but if the legislative purpose is to further the welfare of the entire county or city as a part of an overall zoning plan, the ordinance does not constitute illegal spot zoning even though private interests are simultaneously benefited.

*Id.* at 403-04, 157 S.E.2d at 924 (citation omitted). The contestants assert that their evidence was "carefully tailored" to meet this standard and demonstrated that the Board's actions constituted illegal spot zoning.

■ The contestants' evidence indicates incompatible use and variation from the 1982 Comprehensive Plan and 1987 Zoning Ordinance, but is silent with regard to legislative purpose, a critical element in the test for illegal spot zoning. In this posture, the evidence is probative of unreasonableness but does not conclusively establish illegal spot zoning as defined in *Wilhelm.*

Having resolved the threshold issue, we now must determine whether the Board produced sufficient evidence of reasonableness to make the propriety of the rezonings fairly debatable. The Board asserts that it "has enunciated ample evidence to justify and substantiate its decision to rezone." This evidence is of two kinds: (1) evidence of interpretations which contradict positions taken by the contestants; and (2) independent evidence showing the reasonableness of the Board's actions. Examples of the first category include the Board's assertion that the 1989 Comprehensive Plan[1] constitutes the County's plan for future land use and it, rather than the 1982 document, contains the relevant policies.[2] The 1989 plan includes a designation entitled "On Water Community Area" which allows four dwellings per acre on the waterfront. The Board maintains that the subject parcels are located within this designation, although the contestants dispute that designation with regard to Hudgins Point.

Similarly, the Board asserts that the 1987 Zoning Ordinance does not preclude the subject rezonings. While Section 9-1 of the Zoning Ordinance states that B-2 designations are "generally" not on the waterfront, the Board argues that the ordinance does not prohibit the designation on the waterfront. Additionally, the Board points out that both parcels retain R-1 designations on the

---

[1] Review of the 1982 Comprehensive Plan was instituted as a result of the County's adoption of the 1987 Zoning Ordinance and the Flood Plain Ordinance, both of which provided new enforcement mechanisms. The 1987 plan was the product of sessions involving the Planning Commission, staff, and the public. A draft was initially recommended to the Board in 1988.

[2] Mr. Costin, the Mathews County Director of Planning and Zoning, testified that the rezonings did not violate the 1982 Comprehensive Plan. Explaining that, because the categories of residential densities in the 1982 Plan and the 1987 Ordinance were not identical, Mr. Costin had to establish a correlation between the two. Under his correlation a density of two to four units per acre was the medium density range.

waterfront allowing drainage, soil erosion, and similar activities thereon.

The Board also disputes the contestants' contention that the rezonings violate Section 15.13-3 of the Zoning Ordinance. As the contestants interpret that section, the allowable density for Residential Cluster Alternative Development must be measured against the surrounding zoning districts, or in this case the R-1 districts adjacent to the Gwynn's Island and Hudgins Point parcels. This interpretation, the Board asserts, would prohibit development of any project with density greater than that which exists in surrounding areas. The Board argues that because the Cluster Alternative Development is the special use sought in the B-2 district, it is B-2, "the district in which the development is proposed," which constitutes the standard for measurement.

The second category of evidence, showing the reasonableness of the Board's actions, is contained in the staff reports to the Board on the rezonings and the minutes of the Board meeting at which the rezonings were adopted. Mr. Costin prepared two reports for the Board which analyzed the rezoning and special exception requests of Gwynn's Island and Hudgins Point. Both reports recommended approval of the requests with certain conditions, including acceptance of the proffer limiting the use under the B-2 designation to residential only. Both reports included the following statements:

> When considered with the proffered condition, this rezoning request becomes more dissimilar to the intent of the Business-2 (B-2) zoning district than similar.
>
> . . . .
>
> [T]he use of the property will be residential, which not only is in keeping with the Comprehensive Plan, but is also in keeping with the past development of the immediate area and serves to reinforce residential use as opposed to commercial use.
>
> . . . .
>
> This rezoning serves to provide numerous community benefits. . . . [A] form of housing will be provided in the community which allows for middle/upper income individuals/families to remain or take up residency in Mathews County.
>
> Additional community benefit is derived as the project will increase real estate values not only of the subject parcel, but

also parcels in the surrounding area, thereby creating more taxable revenue.

Finally, the following observations, made in conjunction with the adoption of the rezoning requests, were included in the minutes of the Board meeting:

This community, in a large part, is a retirement community. Projects like this help preserve the ability of those in that lifestyle as well as those entering that lifestyle to stay in and come to Mathews County. . . .

There appears to be some benefit for everybody. Because, the first proffer reserves the land for residential development, which is in keeping with the Comprehensive Plan, and the size of this project is in line with the plan's suggested density. I make the motion that this Board approve the rezoning. . . .

I find that multi-family housing, which is proffered, to be a compatible use to the area, and that it is an acceptable and desirable transitional use which buffers between the surrounding homes and Callis' Wharf. As well, it is a needed use in the County. It will provide a housing type, it will require monitoring of the well, which helps protect citizen's health, and it will assist the County from the point of revenue generation.

 Taking the Board's evidence as found in the stipulation, we conclude that the Board produced sufficient evidence to establish that the purpose of rezoning the subject parcels was not "solely to serve the interests" of private landowners. The rezoning could be interpreted to comply with the 1987 Zoning Ordinance, and there was a basis to utilize the 1989 Comprehensive Plan when considering the propriety of the instant rezoning actions. As a result, the reasonableness of the rezoning of the Gwynn's Island and Hudgins Point parcels and authorization of the requested special uses was fairly debatable and, therefore, the legislative acts were valid.

We will affirm the orders of the trial court dismissing the complaints.

*Affirmed.*