# CIRCUIT COURT OF CAROLINE COUNTY

Carl S. Heflin et al.

v.

Caroline County et al.

March 1, 2010

Case No. CL08-594

By Judge Harry T. Taliaferro, III

Plaintiffs bring this suit challenging a special exception permit issued by the Board of Supervisors of Caroline County (the "Board") for a Sand and Gravel Extraction use on property zoned Rural Preservation (RP) within the Resource Sensitive Overlay District ("RSD overlay"). The permit was issued to Clark's Cut II, L.L.C. ("Clark's Cut"). The site of the use is on land owned by Emmett C. Snead, III.

All defendants, on substantially the same grounds, have demurred to all five counts in the Complaint for Declaratory Judgment and other relief. Additionally, either within the Demurrer or by separate Motion to Dismiss or for Summary Judgment, all defendants seek to have plaintiffs struck from the suit for lack of standing and to bar plaintiffs from challenging the zoning administrator's decision that the sand and gravel extraction use sought was permitted by special exception in the RP zoning district on the grounds that plaintiffs failed to exhaust their administrative remedies. Upon notice by defendants to plaintiffs, these matters came to be heard on August 26, 2009. Because of matters in the Record being before this Court for

purposes of the hearing, the Court treats all motions of Defendants as a Demurrer.

On August 13, 2009, the Court entered a Consent Order granting defendants' Motion Craving Oyer by which certain exhibits became a part of the record of this case, namely (1) minutes of July 16, 2008, Planning Commission Meeting; (2) the Special Exception Board Packet before the supervisors for review at the October 28, 2008, public hearing, which includes application for special exception, Planning and Community Development Staff Report, recommendation from Virginia Department of Game and Inland Fisheries, correspondence from Caroline County Technical Review Committee, review of Special Exception by Sullivan, Donahue and Ingalls, and Review Form approvals and/or comments from Caroline County Departments of Public Works, Utilities, Schools, Recreation, Building Official, Health, Economic Development and Sheriff's Office as well as from Fort A. P. Hill and from the Virginia Department of Transportation; (3) correspondence and petitions received from citizens addressing the special exception which were in the Board Packet before the supervisors for review at the public hearing; (4) minutes of the October 28, 2008, public hearing on the special exception held at a regular meeting of the board of supervisors; (5) memorandum dated November 6, 2008, from the Director of the Caroline County Department of Planning and Community Development (the "DPCD") discussing the special exception including further correspondence relating thereto provided to the board after the public hearing and present before the board at its November 13, 2008, meeting; and (6) minutes of the November 13, 2008, meeting of the board of supervisors at which the board approved the special exception (collectively the "Record"). These papers comprise the documentation of the zoning proceeding before the Board.

### Demurrers

For the purposes of a Demurrer, the truth of all material facts, and reasonable inferences therefrom, are taken as admitted. *Marshall v. Bird*, 230 Va. 89 (1985). On demurrer, a court may examine not only the substantive allegations attacked, but also any accompanying exhibit mentioned in the pleadings. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22 (1993). If a motion craving oyer has been granted, the Court, in ruling on the demurrer, may properly consider the facts alleged as amplified by the documents added to the Record on the motion. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396 (1985). The Court "may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Ward's Equipment v. New Holland North America*, 254 Va. 379 (1997); *Dodge v. Trustees of Randolph Macon Women's College*, 276 Va. 1 (2008). Allegations stating conclusions of law

or inferences drawn from conclusions of law are not taken as admitted by a demurrer. *Motors Ins. Co. v. United States Fire Ins. Co.*, 208 Va. 684 (1968).

## Count I: Violation of Zoning Ordinance

In Count I, plaintiffs have asked the Court to declare the special exception permit null and void *ab initio* because of inconsistencies in the language referring to the use. The special exception use permitted in a RP zoned district is "Sand and Gravel Extraction and Sales." In the application, it is stated as "Sand and Gravel Extraction." In published notices and in the recorded Special Exception Permit the Record shows the use is referred to as "Sand and Gravel Extraction Operation." The permit issued is invalid, say plaintiffs, because the use authorized exceeds the scope of sand and gravel use permitted in a RP zoned district. They assert the issued permit authorizes the more intensive "Sand and Gravel Operations" and "Crushed Stone Operations," which are uses allowed only in the M-1 industrial district with a special exception. Plaintiffs also proffer that the words "processing and operations" in condition 14 of the approved special exception confirm or support an interpretation that M-1 uses are being referred to.

Defendants demur on the grounds that such allegations fail to state a claim voiding the issued permit. The Court agrees. The Record clearly shows the application, plan, and permit issued were specifically for the RP, Rural Preservation, special exception provided under Caroline County Zoning Ordinance ("CZO") § 4-5-3. Plaintiffs' arguments would have the Court change "Operation," referencing the use "Extraction," to "Operations," which they argue would reference multiple M-1 industrial related uses, and then drop the limiting word "Extraction" to obtain "Sand and Gravel Operations" and "Crushed Stone Operation," two industrial special exception uses allowed only in M-1. The arguments for such a construction are too attenuated. Words must be given their common ordinary meaning. No proposed M-1 special exception uses were before the Board. For this to have been so, the site first would have had to be zoned M-1. The application did not seek this.

Condition 14 addresses restoration to agricultural productivity. In its entirety it reads: "Excluding marketable sand and gravel, no materials shall be transported off site. Topsoil and subsoil stratas shall be separated and remain on site to be used in the ongoing restoration process. At no time shall more than thirty acres, including the processing and operations area, be mined." The words "processing and operations" must be read in context, consistent with all the language in the condition. "Processing" means the "ongoing [soil] restoration process," not an unnamed M-1 industrial process. Plaintiffs' argument that the use applied for and granted allows industrial "operations" by which sand and gravel would be rendered on site into some

other product runs counter to the condition language which, in accord with this being a sand and gravel extraction, allows only sand and gravel to be transported off the site. By its plain meaning, condition 14 requires soil to be left on site for agricultural restoration and limits the entire area of on-site operational aspects of extraction (excavation, soil strata separation, loading sand and gravel for transport, etc.) and on-site soil storage/restoration to no more than thirty acres. It does not deregulate sand and gravel extraction opening up the site for manufacturing. The Court finds no ambiguity in the permit process or in the language of condition 14 as argued by plaintiffs.

### Count II: Violation of Zoning Ordinance II

In Count II, plaintiffs seek a declaratory judgment that the Board's approval of the special exception was improper and is of no force or effect. The evidence which the Board had at the public hearing, plaintiffs say in their Complaint, demonstrated negative impacts and failed to demonstrate positive effects of the proposed special exception. (Comp. ¶¶ 20 and 21.) Count II states the Board's action of approval failed to satisfy seven of the nine "general standards" for the issuance of a special exception as set forth in CZO § 17-13-D. (Comp. ¶¶ 34 through 42.) Further the Complaint states the Board failed to make formal factual findings that the special exception standards specified in the CZO had been met. (Comp. ¶ 22.)

Defendants' demur on the grounds that no facts alleged in the Complaint (now inclusive of the Record) show the Board's action to be improper and that the use in question was, in any event, properly permitted under the CZO in a RP district in the RSD overlay with a special exception.

First, defendants argue that the Complaint as augmented by the Record shows that what the Board had before it demonstrated both positive and negative effects, that the nature and extent of such impacts were fairly debatable and that the Board's permit approval with twenty attached conditions was a proper legislative act and in compliance with zoning requirements.

It is the law of Virginia that, when a governing body acts to grant or refuse a special exception permit, it acts in a legislative capacity. Such action is presumed to be reasonable. The presumption is rebuttable, but it stands until surmounted by evidence of unreasonableness. The governing body meets this challenge with some evidence of reasonableness. It is not required to present evidence to show reasonableness by a preponderance of the evidence. For the legislative act to be sustained, it must only show evidence sufficient to make the question "fairly debatable." An issue may be said to be fairly debatable when, measured by both qualitative and quantitative tests, the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions. See *County Board of Arlington v. Bratic*, 237 Va. 221, 227 (1989) (citing

*Loudoun County v. Lerner*, 221 Va. 30, 34 (1980); *County of Fairfax v. Parker*, 186 Va. 675, 680 (1947); *Fairfax County v. Williams*, 216 Va. 49, 58 (1975); *Fairfax County v. Snell Corp.*, 214 Va. 655, 659 (1974)).

The Court has reviewed the extensive Record in this case. The summary which begins with the first full paragraph at the top of page 7 through the last full paragraph at the bottom of page 9 of the Board's Brief in Support of Dismissal is a fair overview of what the Record shows the Board had to consider in weighing the application. The DPCD staff reports analyze policies in the Comprehensive Plan and explain Clark's Cut's General Development Plan and the recommended conditions for the special exception. The nine general standards in CZO § 17-13-D are set out in a block chart with staff findings and/or recommendations with respect to each. The documentation in the Record shows the pattern of development in the community, inclusive of mining activities. It reports the effect of the proposed use on traffic on Route 17, a matter considered throughout the application process. It shows how buffers, setbacks, road improvements, and screening as well as existing federal, state, and local laws and regulations, as applied to the proposed use satisfy the general standards. The staff analysis expressly deems the application to be consistent with the CZO and the Comprehensive Plan.

The Record shows the site of the proposed use adjoining on two sides a much larger sand and gravel extraction which has been ongoing for decades. The staff distinguished the Board's denial in 2001 of a special exception application for a larger sand and gravel extraction in a different location from the present application advising that neither application constitutes a precedent, since each special exception application stood on its own facts and circumstances.

The Board minutes, covering thirty-five pages, demonstrate significant public participation. The Board heard public comment from dozens of citizens with opposing views and received numerous letters and petitions. There were petitions signed by 171 people favoring the permit and 270 people opposing it. The Board packet contained written comments concerning the application on Review Forms from numerous agencies and departments. Michael Finchum, the Zoning Administrator and the Director of DPCD, told the Board that the "application appears to be consistent with the requirements of the zoning ordinance and goals of the Comprehensive Plan and the application also appears to meet the applicable general standards for use permits." (The Record, Board meeting minutes 10/20/08, p. 20.)

Other than as accounting for the effect of increased vehicular traffic, which claim withstands demurrer, the Record supports that what the Board had before it, although conflicting, was sufficient, to the standard of what is fairly debatable for the Board to have decided that the special exception permit with attached conditions satisfied the general standards in CZO § 17-13-D.

Second, defendants argue that the permit is not invalid by reason of the Board's failure to set out findings or conclusions because there is no such requirement in the CZO and, in any event, the Record shows that the Board did affirmatively determine that the permit complied with the CZO and the Comprehensive Plan.

CZO § 17-13-C-1 provides for the issuance of a special exception "upon a finding of the Board of Supervisors that the [special exception use] will not be detrimental to the character of adjacent properties and will be consistent with the purpose of the provisions of this Ordinance and the Comprehensive Plan." CZO § 17-13-D provides that all special exception permits "shall satisfy" the nine general standards contained therein. Plaintiffs' position is that the former section mandates an express finding as to the broad general zoning purposes therein stated and that, when both sections are read together, there is a requirement that express findings by the Board be stated as to the nine general standards. Plaintiffs' query that, without such express stated findings or conclusions, how will the Court know what the Board did.

The County's zoning actions must comply with the requirements of its own ordinance. Failure to do so is arbitrary and capricious. In *Renkey v. County Board of Arlington County*, 272 Va. 369 (2006), rezoning was found to be invalid because of the County's failure to follow its zoning ordinance. There, the county board rezoned R-S property to C-R zoning where the zoning ordinance required that the site must first be zoned C-3 before it could be rezoned C-R. Similarly, in *Metheny v. County of Stafford*, Stafford Circuit Court File # CH105-99-00, Judge Harrison Braxton of this Circuit remanded a zoning request approved by the supervisors back to the planning commission where an additional material owner's proffer had been added after the supervisors public hearing because the ordinance required that any such change must go back for planning commission review before final zoning approval. In both cases, there were clear violations of black letter legislative mandates. Neither involved the governing body weighing fairly debatable matters.

It is not required that the Board must set out some express determination or finding on each of the nine general standards in CZO § 17-13-D. For the Court to know what the Board did, it is enough that the Record shows there was sufficient information for the Board to be satisfied to the standard of what is fairly debatable that the applicable standards had been met. The language in CZO § 17-13-C-1, however, does expressly require "a finding" of stated zoning principles. The Board must follow its own ordinance by making some expressly stated finding that these principles have been met regardless of how conclusory it may be.

The Record shows the following motion to accept the special exception was made by the Board:

Supervisor Popowicz moved and Supervisor Acors seconded to accept [the special exception] as amended, and to include condition # 10: This Special Exception Permit is subject to renewal by the Board of Supervisors one year from commencement of mining operations; and # 21 stating that the applicant will be responsible for the installation of a dry hydrant and access to that hydrant by fire and rescue.

(Board of Supervisors minutes, 11/13/2008, pp. 31-32.)

The minutes of the November 13, 2008, board meeting also reflect that Ms. Cosby asked and Mr. Popowicz and Mr. Acors agreed that the Motion include the changes recommended by staff in the proposed conditions. Thereafter the Motion carried 3 to 2.

Nothing in the Motion approved at the November board meeting tracked the finding requirement in CZO § 17-13-C-1. Defendants cite *Industrial D.A of the City of Richmond v. La France Cleaners*, 216 Va. 277 (1973), in support of their argument that, because there is fairly debatable evidence in the Record, there is no requirement for an express finding. The La France case stated that, absent a constitutional or statutory mandate to the contrary, legislative bodies are not required to conduct hearings in aid of legislation because they are presumed to be cognizant of all existing facts and circumstances bearing upon their action. (This is but another way of saying that legislative action will not be declared invalid for want of legislative history showing the reason or motive which actuated the legislators enactment.) But in our case, the CZO requires the conduct of special exception public hearings before both the Planning Commission and Board and specifically under § 17-13-D-1 "a finding" by the Board of certain zoning principles.

As the Court reads the Record, the staff while opining on the propriety of issuance of the special exception, correctly deferred the finding to the Board. While the Board did attach twenty conditions to the special exception, there was no affirmative indication *on the Board's part* in approving issuance of the permit that it did so based on a finding of compliance with CZO § 17-13-C-1. The issue of how the lack of a formal finding may be dealt with survives demurrer and remains before the Court.

### Count III: Violation of Virginia Law

In Count III, plaintiffs seek a declaration by the Court that the special exception was improperly issued and is of no effect because only the applicant, not the County, received benefit from it; the grant was contrary to accepted planning and zoning principles; the grant did not further objectives in Va. Code § 15.2-2200; the effects on parcels in close proximity to the site is contrary to the Comprehensive Plan of Caroline County; and the

grant endangers the health, safety, and welfare of the public and impedes reasonable development of parcels in close proximity. (Comp. ¶¶ 45, 46, 47, 48, and 49).

Defendants' demur on the grounds that no separate cause of action distinct from Count II arises under state law and the Board had sufficient information before it to issue the special exception.

Plaintiffs argue on brief and orally that their claim in Count III is illegal spot zoning. The construction plaintiffs offer is that they have alleged that no benefit accrued to the County from the special exception, therefore their general allegation of unreasonable, arbitrary, or capricious action states a cause of action. Plaintiffs cite *Wilhelm v. Morgan*, 208 Va. 398, 157 S.E.2d 920 (1967), as authority. There, a landowner applied to the County to rezone eight acres within his 110 acre tract from agricultural to industrial to allow a quarry site, which request was approved. In the circuit court, opponents challenged the rezoning as doing the County more harm than good. They lost and appealed on the same point claiming the rezoning to be an arbitrary and capricious exercise of legislative power. At the public hearing, the board chairman had stated that the quarry was what was best for the County. To refute this, plaintiff's expert testified at trial that the rezoning bore no relationship to health, safety, or welfare and, when asked why, he replied that the board should have amended its ordinance to allow the quarry with a special use permit so it could control the use by imposing conditions. The Supreme Court found that this failed to rebut the presumption of legislative validity and, since the Court could not substitute itself for the legislative body, appellants had failed to show the rezoning was not fairly debatable.

*Riverview Farm Assoc., Va. Gen'l Partnership v. Board of Sup'rs of Charles City Co.*, 259 Va. 419, 528 S.E.2d 99 (2000), is also cited by plaintiffs to support the contention that their "bare bones" allegations of arbitrary and capricious action under state law are sufficient to survive a demurrer, entitling them to put on evidence. In *Riverview,* property on the James River was rezoned from business to industrial, and the zoning ordinance was amended to allow new industrial uses in that classification. Garbage offloaded from barges had to be hauled by truck from such property to the county landfill. To induce the zoning changes, the applicant made off site Va. Code § 15.2-2297(A) proffers, one of which required the trucks to use a private right of way over a privately owned A-1 zoned parcel in lieu of using public highways. The plaintiffs also owned A-1 zoned land in proximity to the right of way on the burdened parcel. The zoning changes were alleged to be arbitrary and capricious because they extended industrial use in the form of off site truck traffic over private property designated for agricultural use in violation of the comprehensive plan that designated both the property burdened by the right of way and the plaintiffs' properties for agricultural use. This was held to be sufficiently factually pleaded to survive demurrer.

Under the state code enabling statutes, Va. Code §§ 15.2-2200 et seq., evoked here by plaintiffs, zoning has the overarching purpose of promotion of the health, safety, and welfare of the citizens of the County. What constitutes spot zoning, as defined in *Wilhelm*, is a zoning purpose solely to serve the private interest of a single landowner as opposed to a purpose to further the welfare of the entire county as part of an overall zoning plan. But the simultaneous serving of both a private and the public interest is not spot zoning. See, *id*. 208 Va. at 40-41.

Ostensibly, everyone is held to know their own or adjacent property may be rezoned. The decision making involved in rezoning is distinctively legislative, not judicial. Nevertheless, the law recognizes that, where property owners have a reasonable expectation that they may rely on existing zoning, an abrupt uncontemplated zoning change shall not be thrust upon them. This is consistent with the idea that zoning changes should evolve in a fashion that is reasonably foreseeable under the scheme of zoning.

While sand and gravel extraction is a permitted RP use, it is legislatively determined to require a special exception. This public policy, as the expert who testified in *Wilhelm* knew, contemplates amelioration of the impact of the special use through attachment of conditions. It further recognizes that valuable sand and gravel deposits are located within the RP district. The Record shows that the site is adjacent to an existing extraction operation covering hundreds of acres which has operated for many years and that other such concerns operate nearby in Caroline and in King George and Spotsylvania Counties. Although Count III seems to state the contrary, the sand and gravel extraction special exception use, under the facts in the Record, is not reasonably unforeseeable in the RP zone. The Board has always had the political option to prohibit this use outright in RP or RSD overlay zoning.[1] But it has not. The Board's failure to take such action must be deemed purposeful, rather than an oversight. Applying policy objectives of the General Assembly's enabling statutes on zoning to the Record shows the Board decided that this special exception with numerous conditions attached, did promote the health, safety, and welfare of the citizens and complied with applicable zoning prerequisites.

Having considered the *Wilhelm* and *Riverview Farm* cases cited by plaintiffs, the Court finds that, except as the Court previously found with respect to vehicular traffic in Count II, there are insufficient "bare bones" allegations in Count III to withstand a Demurrer. The Court, although wishing to avoid redundancy, will here again refer to the Record as showing that the Board, to the reasonably debatable standard, addressed requisite

---

[1] The Comprehensive Plan identifies several policies relating to the Route 17 corridor which respect the scenic, historic, and natural resources for which the RSD has been designated in the area; however, the plan also states that "such policies shall not be applied to, or otherwise limit or interfere with . . . [uses] permitted by special exception within the zoning district in the Corridor."

zoning statutes in issuing the special exception with attached conditions. In light of plaintiffs' arguments on spot zoning, plaintiffs should be allowed to replead that claim.

*Count IV: Violation of Virginia Law II*

It is alleged in Count IV that there is no nexus between conditions 9 and 10 attached to the special exception and the mitigation of the negative impact of the proposed use. Condition 9 makes the permit exclusive to Clark's Cut and non-transferable and condition 10 subjects the use to a review by the Board one year after its commencement and every five years thereafter. Plaintiffs argue that, under *Cupp v. Board of Supr's of Fairfax Co.*, 227 Va. 580, 318 S.E.2d 407 (1984), these two conditions lack a nexus and are invalid, and thus so is the special exception.

Defendants demur on the grounds that plaintiffs cannot show they are aggrieved by the invalidity of either of these conditions and thus lack standing for this cause of action and, secondly, there is a nexus because such conditions provide remedies for problems arising from the special exception and hold responsible the permittee. Additionally, defendants state that the CZO allows conditions found invalid to be severed without effecting legislative validity.

In *Cupp*, the appellants challenged a special use condition the county wanted to impose which would have required them to construct and dedicate land for road improvements. The Supreme Court held that, because plaintiffs' zoning request would have changed their business layout, but not the number of their customers, no effect on road use could be shown and, accordingly, no nexus existed for requiring the appellants to construct a highway improvement or dedicate part of their land for widening the road.

The plaintiffs do have standing to address either condition. The Court separately ruled at oral argument that at least plaintiff Heflin has standing to bring this suit. Defendants here challenge standing, arguing plaintiffs fail to allege facts showing that invalidation of conditions 9 or 10 would aggrieve them. One purpose of special exception conditions is to mitigate adverse impacts on adjoining property. While special exception conditions do have the purpose of protecting the general public, they also protect those who demonstrate standing by showing they are more individually and adversely affected than the public at large. Mr. Heflin has done this.

Condition 10 has a sufficient nexus to the purposes of the special exception and is valid. There are frequently compliance review conditions in special exceptions. Va. Code § 15.2-2286(A)(3) provides that a zoning ordinance may include reasonable regulations and provisions for granting special exceptions, and CZO § 17-13-E states that the Board may "specify conditions in granting use permits as it deems necessary in the public interest to assure compliance with the general and specific standards and that it

will continue to do so." The special exception use may be administratively penalized, for example, by the Department of Mines, Minerals, and Energy for violation of its permit. This does not mean, however, that, for the same violation, the Board cannot set its own reviews for the purpose of directly assuring compliance with the special exception under penalty of revocation. It does not follow, as plaintiffs argue, that language in the state code that provides that a Board of Zoning Appeals may impose time limitations on a special exception means that the governing body cannot. Even though the Board has prescribed its own general standards for special exception conditions, nothing prohibits it from prescribing more where, as it was here, appropriate. "It would be impractical to provide standards in ordinances that would be applicable to all [special exception] situations that might arise." *Bollinger v. Roanoke County*, 217 Va. 185, 187 (1976).

Condition 9 states: "This Special Exception Permit is issued exclusively to Clark's Cut II, L.L.C., and is not transferable to any other party or entity." The Board says it deemed this condition necessary to assure compliance with County zoning standards based on the reputation of Snead as the representative of Clark's Cut and as a responsible property owner and farmer and conservator of the land. The Court agrees with the general principle that the good or bad reputation of any applicant is a proper consideration in weighing whether to grant a special exception. But the applicant's ability to assure future compliance is another issue. The problem with the County's position is that Clark's Cut II, L.L.C., is a separate entity from Snead. It holds the permit, not him. Condition 9 is not a prohibition against members of Clark's Cut, Snead included, transferring all the L.L.C. membership to a third party. Neither does it prohibit Snead from conveying to another the land on which the site is located. Such transfers would not change the L.L.C.'s being the exclusive holder of the permit. Should such events occur, Snead would have no role in assuring compliance.

While the Board may have had a different intention, there seems to be a lack of a nexus between condition 9 and the reason the Board gives for it's being necessary, that is Snead's integrity will assure zoning compliance. The Court reads the severability provision CZO § 21-1 as intended to preserve the validity of the whole CZO in the event a section or provision therein is declared invalid. A condition attached to a special exception must be considered differently because, as plaintiffs argue and the Court agrees, the premise that condition 9 is protective leaves open the question of whether the Board, which considered Snead's stature material to zoning compliance, would have granted the special exception without his future involvement. Condition 9 as written does not serve the purpose defendants have argued. The issue of Condition 9 having a valid nexus to the special exceptions survives demurrer and remains before the Court.

## Count V: Failure to Comply with
### § 15.2-2204 of the Code of Virginia

Count V attacks the special exception as void *ab initio* because the published notices of the public hearings of the Planning Commission and Board failed to comply with the requirements of Va. Code § 15.2-2204(A). The notices, attached as Exhibits B and C to the Complaint, describe the proposed special exception use as "Sand and Gravel Extraction Operation." Plaintiffs allege that there is no such listed use in the CZO. In the CZO, the special exception use of "Sand and Gravel Extraction and Sales" is permitted in RP zoning and the special exception use of "sand and gravel operations" (permitted in M-1 zoning only) is not. The language in the published notices, plaintiffs say, has failed to provide a satisfactory "descriptive summary" reasonably apprising the public of the proposed activities, rendering a situation where a citizen would have to conduct legal research to find out whether the proposal was of interest to him or her.

Defendants demur on the grounds that the descriptive summary is sufficient and that, even if the county advertised a more intense use than what was actually being considered, it would only have heightened public awareness and even more motivated citizens to protect their interests. See *Gas Mart Corp. v. Board of Sup'rs of Loudoun County*, 269 Va. 334, 611 S.E.2d 340 (2005). The Court agrees with defendants.

Plaintiffs rely on *Glazebrook v. Board of Sup'rs of Spotsylvania Co.*, 266 Va. 550 (2003). There, published notice stating that the board of supervisors would "[a]mend development standards" for named zoning districts was held not sufficient to satisfy the requirement of a published "descriptive summary" and thus to violate § 15.2-2204(A). The *Glazebrook* decision said that the language in the statute "suggests that the intent of the statute is to generate informed public participation by providing citizens with information about the content of the proposed amendments and the forum for debate concerning those amendments" and "that the General Assembly [did not expect] affected citizens to engage in legal research in order to decide whether to participate in the hearing or to decide what their interests may be." *Id.* at 555.

*Glazebrook* is about whether the published notice flew under the radar in that it failed to reasonably alert citizens as to what individually and collectively was at stake in the proposed zoning action. The notice there considered was so cryptic and general and so lacking in any specific detail that it provided a citizen nothing to go on. Even if a citizen had looked up the zoning section stated in the notice, the reference in such section to "development standards" was but an umbrella title for numerous regulations. A potentially affected citizen could not have reasonably known whether the amendments would be of interest or concern. *Glazebrook* did not "attempt to dictate the exact language of future notices, nor . . . to

establish a bright line rule" but found on the evidence in the case that the notice was inadequate. *Id.* at 556-57.

The published notices in our case are highly detailed. The message here clearly arrived. The language "Sand and Gravel Extraction Operation" as it appears in overall context in the notices provided a sufficient descriptive summary as prescribed by § 15.2-2204(A) to put citizens on notice of how their own interests may be affected and of what actions they might take with respect thereto.

## Standing

The Court ruled during oral argument, in partial determination of defendants' Demurrer on the ground that plaintiffs lacked standing, that the plaintiff Carl S. Heflin had standing to sue. That ruling was based on allegations in ¶ 2 of the Complaint that he owns property contiguous to and adjoining the Snead property and particular allegations in ¶ 20 of "(3) loss of the peaceable enjoyment of the adjoining property" and in ¶ 37 that "the sand and gravel facility will adversely affect the adjoining property owned by Mr. Heflin upon which Ms. Bullock resides through the increased truck traffic, noise, pollution (including runoff), and scenic disturbance generated by such use."

The Court finds that Bullock, as a tenant on Heflin's property, also has standing to sue. All other plaintiffs are alleged to be owners of property in Caroline County, identified by tax map numbers, "located in close proximity to the [Snead] Property." For standing to sue, a plaintiff must be "aggrieved." As stated in *Virginia Beach Beautification Comm'n v. Board of Zoning Appeals*, 231 Va. 415, 344 S.E.2d 899 (1986):

> [i]n order for a petitioner to be "aggrieved," it must affirmatively appear that such person had some direct interest in the subject matter of the proceeding that he seeks to attack. . . . The petitioner "must show that he has an immediate, pecuniary, and substantial interest in the litigation, and not a remote or indirect interest.". . . Thus, it is not sufficient that the sole interest of the petitioner is to advance some perceived public right or to redress some anticipated public injury when the only wrong he has suffered is in common with other persons, similarly situated. The word "aggrieved" in a statute contemplates a substantial grievance and means a denial of some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally.

*Id.* 231 Va. at 419-20.

Other than for Heflin and Bullock, there are no particularized allegations in the Complaint involving adverse affect on plaintiffs' properties other than what would be suffered in general with other persons similarly situated. Plaintiffs argue that alleging "close proximity" is sufficient on demurrer. In *Riverview Farms Associates*, plaintiffs who alleged that they owned properties "within about 2000 feet of the rezoned property or its access road," that their use of their properties "would be adversely impacted by the trucking noise, litter, dust, odors, and exposure to disease," and that they "live within sufficiently close proximity" were held to possess a "justiciable interest" in the litigation. *Id.*, 259 Va. at 422, 424, 427. In *Virginia Beach Beautification Commission*, the plaintiff could not show proximity to the complained of use because it owned no property. In our case, plaintiffs allege ownership of properties identified by tax map parcel numbers. The tax maps admitted in evidence at the motion hearing as Defendants' Exhibit 1 show plaintiffs' non-adjoining parcels to be up to two miles away from the special exception site, with several located well off Route 17.

The plaintiffs other than Heflin and Bullock must in some fashion allege that the special exception has denied each individually of some personal or property right or imposed individually upon each a burden or obligation different from that suffered by the public generally.

*Failure to Appeal Administrative Determination*
*of Zoning Administrator*

Defendants demur or urge dismissal of the Complaint because the Record shows that plaintiffs, or some of them, attended the Planning Commission and Board public hearings where they heard a statement by Caroline County Zoning Administrator Finchum about the application and thereafter failed within the time permitted to appeal his administrative determination that the special exception was the Sand and Gravel Extraction and Sales use permitted in RP zoning in CZO § 4-5-3. Va. Code § 15.2-2311 and CZO § 18-3-B provide that administrative interpretations are not subject to judicial attack unless the plaintiffs exhausted their "adequate and available administrative remedies." *Lilly v. Caroline Co.*, 259 Va. 291, 526 S.E.2d 743 (2000).

Defendants reliance on *Lilly* is questionable in light of distinguishable facts in that case. In *Lilly*, during a public hearing before the Board with the plaintiffs present, the zoning administrator was specifically asked whether construction of a radio tower was a "by-right" use in the RP zone. The administrator said he did not know but would research it. At a later meeting also attended by the plaintiffs, the zoning administrator stated that he had determined the tower was a by-right use in RP zoning. The minutes reflected that the administrator explained that the tower, but not the office and broadcasting facilities, could be built on the site without approval of

a special exception and then added that his ruling could be appealed to the board of zoning appeals. No one, including the plaintiffs, appealed the determination announced at the meeting.

When suit was filed several months later, the trial court sustained a demurrer for failure to exhaust the administrative remedy of appeal. The Supreme Court affirmed.

There are no allegations in the Complaint nor anything the Court sees in the Record that reflect something like the facts in *Lilly* occurred in our case. Nothing in the Record indicates that Finchum as zoning administrator announced he was making an administrative determination about the special exception or stated there was a right to appeal his verbal determination or that the plaintiffs heard whatever it was he said.

We cannot from the Complaint or the Record find that there was, for purposes of this demurrer, an administrative determination that would trigger the running of a time limit to appeal.

### Conclusion

In summary, the Court rules pursuant to this letter opinion that:

(1) The Demurrer to Count I: Violation of Zoning Ordinance is sustained.

(2) The Demurrer to Count II: Violation of Zoning Ordinance II is overruled on the claim of the Board's lack of proper consideration of the effect of increased vehicular traffic in issuing the special exception permit under the CZO and Comprehensive Plan and on the ground of the Board's not having stated a finding under CZO § 17-13-C-1, subject to the Court ruling on how the latter issue will be addressed. Such Demurrer is sustained on the other claims in Count II. Leave is given to the plaintiffs to so amend Count II.

(3) The Demurrer to Count III: Violation of Virginia Law is sustained, with leave to the plaintiffs to file an amended pleading alleging grounds for why the issuance of the special exception constituted illegal spot zoning. The Court believes the claim related to increased vehicular traffic should be repleaded under Count II.

(4) The Demurrer to Count IV: Violation of Virginia Law II is overruled with respect to Condition 10 of the special exception, but sustained with respect to Condition 9, subject to the Court's ruling on how this issue will be addressed.

(5) The Demurrer to Count V: Failure to Comply with § 15.2-2204 of the Code of Virginia is sustained.

(6) The Demurrer based on plaintiffs' lack of standing is overruled as to plaintiffs Heflin and Bullock and sustained as to the other plaintiffs with leave to them to file an amended pleading alleging grounds for their having standing as aggrieved parties.

(7) The Demurrer for failure to appeal an administrative determination by the zoning administrator is overruled.

The plaintiffs shall have twenty-one days from the entry of such Order to file amended pleadings. The defendants shall have twenty-one days from receipt of plaintiffs' amended pleadings to file their responsive pleading.